2017 PA Super 137

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
EDWARD GOLPHIN :
:
Appellant : No. 1351 EDA 2016

Appeal from the Judgment of Sentence April 8, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005374-2014

BEFORE: LAZARUS, SOLANO, JJ., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED MAY 08, 2017**

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following Appellant's conviction by a jury on the charges of third-degree murder, conspiracy, aggravated assault, and endangering the welfare of a child ("EWOC").[1] After a careful review, we affirm.

Following the death of the four-year-old victim, S.B., Appellant was arrested, and he proceeded to a jury trial at which he was represented by

---

[1] 18 Pa.C.S.A. §§ 2502(c), 903, 2702(a), and 4304(a)(1), respectively.

[*] Former Justice specially assigned to the Superior Court.

counsel.[2] The Honorable Genece Brinkley has summarized in detail the testimony presented at trial, and her factual findings are supported by the record. Trial Court Opinion, filed 9/2/16, at 3-29. Thus, we set forth only those background facts necessary for an understanding of this appeal.

The evidence reveals that Josephita Brown and her two children, Sean B. and S.B., lived with her paramour, Appellant. At some point, six-year-old Sean B. reported to his grandmother that Appellant had hit him, and thereafter, his grandmother gained custody of him. *Id.* at 4-5. However, S.B. continued to live with Josephita and Appellant, who subsequently had a child of their own, A.B. *Id.* at 5

In May of 2013, S.B. suffered a broken leg, and Josephita provided inconsistent statements as to how the fracture occurred. *Id.* at 5-6. S.B.'s daycare provider noticed that S.B. also had several deep lacerations to her back, and Josephita provided inconsistent statements as to how the injuries occurred. *Id.* at 6, 14-15. The Department of Human Services received a report of abuse concerning S.B. in June of 2013, and they put into place a safety plan, which required Appellant's cousin to supervise Josephita's and Appellant's interactions with S.B. *Id.* at 6.

_____

[2] S.B.'s mother, Josephita Brown, was also charged in connection with the death of S.B. She pled guilty to the charges of EWOC, conspiracy, and involuntary manslaughter; the trial court sentenced her to an aggregate of four years to eight years in prison.

During the early morning hours of July 16, 2013, Josephita took an unresponsive S.B. to the Children's Hospital of Philadelphia ("CHOP"), where S.B. was pronounced dead. *Id.* at 10. A subsequent autopsy revealed that S.B. died as a result of internal blood loss caused by a laceration to her liver. *Id.* at 19. At the time of her death, S.B. had additional new and pre-existing injuries, including scars, scrapes, bruises, scratches, bite marks, a fractured tibia, a tear to her small bowel mesentery, 11 fractured ribs, and a ruptured eardrum. *Id.* at 19-23.

Upon questioning, Josephita informed the police that she observed Appellant punching and kicking S.B. during the late evening hours of July 15, 2013, and he then left the house. *Id.* at 9. Upon his return, Appellant began beating S.B. again, and Josephita could hear S.B.'s screams and noticed that she had an adult bite mark on her lower lip. *Id.* at 10. Appellant again left the house, at which time S.B. was no longer breathing. *Id.* When Appellant later returned, Josephita told him that S.B. was dead, and Appellant took them to CHOP. *Id.* Josephita admitted to police that S.B. had broken her leg in March of 2013 when Appellant pushed her down a flight of stairs. *Id.* at 9. She also admitted that S.B.'s back lacerations resulted from Appellant beating her with a belt buckle. *Id.*

At the conclusion of trial, on February 2, 2016, the jury found Appellant guilty of the offenses indicated *supra*, and on April 8, 2016, the trial court sentenced Appellant to 20 to 40 years in prison for third-degree

murder, 20 to 40 years in prison for conspiracy, 10 to 20 years in prison for aggravated assault, and 2½ to 5 years in prison for EWOC. The trial court imposed the sentences consecutively, resulting in an aggregate sentence of 52½ years to 105 years in prison. Appellant did not file a post-sentence motion; however, represented by new counsel, Appellant filed this timely appeal on April 28, 2016. All Pa.R.A.P. 1925 requirements have been met.

Appellant presents the following issues for our review:

I. Is Appellant entitled to an arrest of judgment with regard to his convictions for third-degree murder, criminal conspiracy, aggravated assault, and [EWOC] since the evidence is insufficient to sustain these convictions as the Commonwealth failed to prove Appellant's guilt of these crimes beyond a reasonable doubt?

II. Is Appellant entitled to a new trial as a result of the trial court's pretrial ruling that granted the Commonwealth's motion to admit evidence of other crimes and/or bad acts?

III. Is Appellant entitled to a new trial as a result of the trial court's pretrial ruling that granted the Commonwealth's motion to admit the prior statements of [Sean] B.?

IV. Is Appellant entitled to a new trial as a result of the trial court's failure to grant Appellant's challenges for cause to prospective jurors number twelve and forty-two?

V. Is Appellant entitled to a new trial as a result of the trial court's restriction on Appellant's cross-examination of Commonwealth witness Tracey Cobb concerning a false allegation of rape made by [co-conspirator] Josephita Brown?

VI. Is Appellant entitled to a new trial as a result of the trial court's denial of Appellant's motion for a mistrial after the prosecutor commented on redirect examination of Commonwealth witness Dr. Lawrence Dobrin that she had to address "some of the irrelevancies we were just subjected to for the past 20 minutes"?

> VII. Is Appellant entitled to be resentenced since the sentences imposed for aggravated assault and [EWOC] merged with the sentence imposed for third-degree murder?

Appellant's Brief at 5-6.

In his first issue, Appellant challenges the sufficiency of the evidence supporting his convictions. Specifically, Appellant contends the evidence was insufficient to prove that (1) Appellant had the requisite *mens rea* for third-degree murder, (2) Appellant entered into an agreement with Josephita to commit third-degree murder as is required for conspiracy, and (3) Appellant was S.B.'s guardian, supervised S.B., or otherwise violated any duty of care as required for EWOC.[3]

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the

---

[3] Appellant presents no specific sufficiency argument as it relates to his aggravated assault conviction; however, as the trial court has aptly reasoned, the evidence was sufficient to sustain this conviction. **See** Trial Court Opinion, filed 9/2/16, at 36-37.

[finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Further, in viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the court must give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Harden*, 103 A.3d 107, 111 (Pa.Super. 2014) (citation and quotation omitted).

Third-degree murder is defined [as] all other kinds of murder other than first degree murder or second degree murder. The elements of third-degree murder, as developed by case law, are a killing done with legal malice.

Malice exists where there is a particular ill-will, and also where there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty.

*Commonwealth v. Marquez*, 980 A.2d 145, 148 (Pa.Super. 2009) (*en banc*) (quotations and quotation marks omitted). "Malice is established where an actor consciously disregard[s] an unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Commonwealth v. Devine*, 26 A.3d 1139, 1146 (Pa.Super. 2011) (quotation and quotation marks omitted). "Malice may be inferred by considering the totality of the circumstances." *Commonwealth v. Dunphy*, 20 A.3d 1215, 1219 (Pa.Super. 2011) (citation omitted).

To convict a defendant of conspiracy, the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a "co-conspirator") to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed

upon crime. 18 Pa.C.S.[A.] § 903. The essence of a criminal conspiracy, which is what distinguishes this crime from accomplice liability, is the agreement made between the co-conspirators.

"[M]ere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient" to establish that a defendant was part of a conspiratorial agreement to commit the crime. There needs to be some additional proof that the defendant intended to commit the crime along with his co-conspirator. Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available. Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by "the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators." Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act.

*Commonwealth v. Murphy*, 577 Pa. 275, 292, 844 A.2d 1228, 1238 (2004) (citations and quotations omitted).

In the case *sub judice*, in finding no merit to Appellant's sufficiency of the evidence claims as it relates to his convictions for third-degree murder and conspiracy, the trial court indicated the following:

[Dr. Samuel Gulino, the Chief Medical Examiner,] testified that S.B. died from blood loss caused by a laceration to her liver which would have been inflicted sometime between 11:30 p.m. on July 15, 2013, and 1:25 a.m. on July 16, 2013. Gulino further testified that such an injury was often associated with a clear and obvious incident, such as a car accident, and would not have resulted from an everyday injury, such as an accidental blow to the abdomen. Gulino testified that S.B. also suffered a tear to her small bowel mesentery, which indicated a very strong blow that was able to transmit force to the deep structures of S.B.'s abdomen. Gulino further testified that S.B. had numerous other injuries, including but not limited to, 11 broken ribs, a tibia

which had been fractured and then re-fractured, multiple bite marks, and scarring across her back.

Trial Court Opinion, filed 9/2/16, at 32.

Moreover, the trial court indicated:

Josephita testified that, on the day S.B. was killed, [Appellant] punched and kicked S.B. and that, after [Appellant] had stopped beating her, S.B. was no longer breathing. Josephita further testified that [Appellant] bit S.B. on her bottom lip during the beating and that S.B. was dead by the time [Appellant, who had left after the beating,] returned home and took them to the hospital. Josephita testified that [Appellant] frequently punched and kicked S.B., and had broken her leg when he pushed her down the stairs. Josephita further testified that [Appellant] hit S.B. with his belt buckle, causing the injuries to her back, but she did not stop [Appellant] from abusing S.B. because she was afraid of him and felt ashamed.

***

[Head Start Learning Tree employee, Ashamalanda Rooney,] testified that in June 2013 she noticed S.B. had extensive, deep wounds to her back which were consistent with being hit by a belt and she photographed the injuries. Rooney further testified that S.B. had broken her leg and had gotten the cast off her leg the week before she started at her daycare. Rooney stated that S.B. had a slight limp when the cast initially came off but had a much more severe limp when she came back to daycare the following Monday, to the point where she was in pain while sitting down....[Detective Kimberly Organ] testified that [Appellant's] explanations for where he was at the time of the murder were not credible and were directly contradicted by the information taken from Josephita's cell phone....

[T]here was a great deal of evidence proving that [Appellant] engaged in a pattern of abuse against S.B., culminating in an episode wherein [Appellant] hit S.B. so hard that he lacerated her liver and small bowel mesentery, causing her to bleed to death. In doing so, [Appellant] displayed the requisite level of malice, that is wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty. At the time of her death, S.B. was only [four]-years-old and weighed only 36 pounds. Nonetheless, [Appellant] subjected her to a prolonged torture and ultimately

killed her in an attack of such ferocity that Gulino likened her injuries and impact upon her body to having been hit by a car.

* * *

[Commonwealth witness Tracey Cobb, who is Josephita's mother,] testified that [Appellant] lied to her about how S.B. broke her leg while Josephita remained silent. Multiple witnesses testified that Josephita lied and offered numerous explanations for S.B.'s various injuries....Josephita testified that she beat S.B. with the handle of a broom and that she told S.B. to lie about how she sustained the injuries. Rooney testified that both [Appellant] and Josephita lied to her about how S.B. sustained the injuries to her back. Thus, the evidence tended to show that both [Appellant] and Josephita physically abused S.B. over the course of months and entered into an agreement with each other to lie about the course of S.B.'s injuries so that they could continue to abuse her. S.B.'s eventual death at the hands of [Appellant] was a natural and probable consequence of that agreement to cover up her abuse.

*Id.* at 32-33, 35-36.

We agree with the trial court's reasoning in this regard, and we reject Appellant's challenges to the sufficiency of the evidence with regard to his convictions for third-degree murder and conspiracy. **See Murphy**, **supra**; **Devine**, **supra**.

Additionally, we likewise reject Appellant's claim the evidence was insufficient to prove that he was S.B.'s guardian, responsible for her supervision, or otherwise violated any duty of care as required for EWOC.

In Pennsylvania, "'[a] parent, guardian, or other person supervising the welfare of a child under 18 years of age...commits an offense if he knowingly endangers the welfare of the child by violating the duty of care, protection, or support.'" **Commonwealth v. Leatherby**, 116 A.3d 73, 81

(Pa.Super. 2015) (quoting 18 Pa.C.S.A. § 4304(a)). As the trial court indicated herein,

> [m]ultiple witnesses testified that [Appellant] lived with S.B. and her mother, Josephita, in multiple homes across South and Southwest Philadelphia. Cobb testified that, after Josephita and [Appellant] moved in together, Josephita had a baby, A.G., who they raised with S.B. [Appellant's cousin] testified that S.B. referred to [Appellant] as "Daddy." Rooney testified that [Appellant] would occasionally pick S.B. up from daycare. Thus, the evidence showed that [Appellant] was in a father-figure position to S.B. and had a corresponding duty of care.

Trial Court Opinion, filed 9/2/16, at 38.

As this Court has previously stated, "[i]n an age when nontraditional living arrangements are commonplace, it is hard to imagine that the common sense of the community would serve to eliminate adult persons residing with a non-custodial child from the scope of a statute protecting the physical and moral welfare of children." *Leatherby*, 116 A.3d at 81 (quotation omitted). Accordingly, we find no merit to Appellant's sufficiency claim with regard to his conviction for EWOC.

In his next issue, Appellant contends that he is entitled to a new trial as a result of the trial court's pretrial ruling that granted the Commonwealth's motion to admit evidence of Appellant's other crimes and/or bad acts, *i.e.*, Appellant's prior abuse of S.B., A.G., Sean B., and Josephita. With respect to the pretrial ruling by the trial court as to the admissibility of the evidence, the following standard of review applies:

> On appeals challenging an evidentiary ruling of the trial court, our standard of review is limited. A trial court's decision will not

be reversed absent a clear abuse of discretion. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. King*, 959 A.2d 405, 411 (Pa.Super. 2008) (citation, quotation, and quotation marks omitted).

It is well settled that:

Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

*Commonwealth v. Aikens*, 990 A.2d 1181, 1185 (Pa.Super. 2010) (quotation and citation omitted). Additionally, evidence of prior crimes and bad acts may be admitted where the acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development. *Commonwealth v. Powell*, 598 Pa. 224, 956 A.2d 406 (2008).

In explaining the reason for its pretrial ruling, the trial court indicated the following:

With regard to the prior instances of abuse between [Appellant] and S.B., the evidence was admissible both to establish the chain of events and pattern of abuse that eventually led to S.B.'s death as well as to show both [Appellant's] intent and malice towards S.B. As to the evidence

- 11 -

of prior acts of abuse towards A.G. and Sean [B.], the evidence was admissible both to show [Appellant's] absence of mistake in causing S.B.'s death as well as to show a common scheme or plan. In all three instances, the victim was a young child in a filial relationship with [Appellant] that [Appellant] punched, scratched and/or hit. Furthermore, the instances of abuse towards all three children took place [close in time] with one another. With regard to the prior instances of abuse involving Josephita, the evidence was admissible to explain why Josephita did not report [Appellant's] abuse of S.B. to any authorities and why she lied to multiple individuals about the cause of S.B.'s injuries and eventual death, [thus also forming the chain of events leading to S.B.'s death].

Trial Court Opinion, filed 9/2/16, at 42.

Further, in balancing the probative value of the evidence against its prejudicial impact, the trial court noted that the trial court is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration[.]" *Id.* at 40 (quotation marks and quotation omitted). We find no abuse of discretion and conclude the trial court properly admitted the evidence at issue.[4]

_____

[4] Appellant also contends the trial court erred in admitting evidence that Appellant punched Daren Taylor during a graduation ceremony. We agree with the trial court that, assuming, *arguendo*, Appellant has not waived this claim, and the evidence should not have been admitted, such error was harmless. "The sole reference to [Appellant's] prior act involving Daren Taylor occurred during [Ms.] Cobb's testimony. Given the otherwise overwhelming amount of evidence which implicated [Appellant] in S.B.'s death, such a *de minimis* and isolated reference to an unrelated incident is not likely to have contributed to the jury's verdict." Trial Court Opinion, filed 9/2/16, at 42. *See Commonwealth v. Robinson*, 554 Pa. 293, 721 A.2d 344 (1998) (defining harmless error).

In his next issue, Appellant contends he is entitled to a new trial as a result of the trial court's pretrial ruling that granted the Commonwealth's motion to admit the prior out-of-court statements of Sean B. In the case *sub judice*, the Commonwealth filed a pretrial motion seeking to permit Detective Laura Hammond and Ms. Cobb to testify about statements made to them by Sean B. regarding Appellant's assaultive conduct towards him.[5] The Commonwealth asserted that such testimony would be admissible under the "tender years" hearsay exception pursuant to 42 Pa.C.S.A. § 5985.1.

The trial court held an *in camera* hearing on December 17, 2015, and held the matter under advisement. Subsequently, at trial, the trial court granted the Commonwealth's motion and permitted the witnesses to testify about Sean B.'s statements. **See** N.T., 1/27/16, at 67-68 (granting motion); 98-105 (Detective Hammond testifying about interview with Sean B. wherein he described assaultive behavior by Appellant); 119-20 (Ms. Cobb testifying about statements Sean B. said to her regarding Appellant's assaultive behavior). Appellant contends that this was error since Sean B.'s prior statements were not relevant and did not have a sufficient *indicia* of

---

[5] For instance, the Commonwealth indicated, and Ms. Cobb later testified, that, prior to S.B.'s death, Sean B. told Ms. Cobb that Appellant "hit him." **See** N.T., 1/27/16, at 119-20. Further, Detective Hammond testified that, as part of the investigation into S.B.'s death, she interviewed Sean B., who told her that Appellant had "hit him in the head," and on a different occasion, scratched him under his left eye, causing Sean B. to say "ouch." N.T., 1/27/16, at 97-104.

reliability, including the lack of spontaneity, the lack of terms expected of a child of his age, and the existence of a motive to fabricate.

In reviewing the admissibility of evidence, "an appellate court may only reverse upon a showing that the trial court abused its discretion. An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." **Commonwealth v. Cox**, 115 A.3d 333, 336 (Pa.Super. 2015) (*en banc*) (citations omitted).

The Pennsylvania Rules of Evidence define hearsay as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers into evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). "Hearsay is not admissible except as provided by [the Pennsylvania Rules of Evidence], by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802.

The Tender Years Act, 42 Pa.C.S.A. § 5985.1, creates an exception to the hearsay rule for young victims and witnesses. Specifically, the tender years exception provides for the admissibility of certain statements that otherwise may be considered hearsay, as follows:

> **(a) General rule.**—An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in 18 Pa.C.S. Chs....27 (relating to assault)..., not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:
>
> > (1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and

circumstances of the statement provide sufficient indicia of reliability; and

> (2) the child either:
>
> > (i) testifies at the proceeding; or
> >
> > (ii) is unavailable as a witness.

42 Pa.C.S.A. § 5985.1(a).

A statement admitted under the tender years exception must possess sufficient *indicia* of reliability, as determined from the time, content, and circumstances of its making. *Commonwealth v. O'Drain*, 829 A.2d 316, 320 (Pa.Super. 2003) (citation omitted). As our Supreme Court has opined:

> The [Tender Years Act] concerns the admissibility of out-of-court statements made by a child victim or witness to third parties. The admissibility of this type of hearsay is determined by assessing the particularized guarantees of trustworthiness surrounding the circumstances under which the statements were uttered to the person who is testifying. To determine whether a child's out-of-court statements are admissible under the [Tender Years Act], a trial court must assess the relevancy of the statements and their reliability in accordance with the test enunciated in *Idaho v. Wright*, [497 U.S. 805 (1990)]. Although the test is not exclusive, the most obvious factors to be considered include the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age and the lack of a motive to fabricate.

*Commonwealth v. Walter*, 625 Pa. 522, 539, 93 A.3d 442, 451 (2014) (quotation marks and quotations omitted).

In the case *sub judice*, Sean B. testified at trial. Therefore, the only issue was whether the *Walter* test was satisfied. In determining that it was satisfied by the Commonwealth, the trial court explained as follows:

- 15 -

Sean [B.] was 6 years old at the time he gave statements, [he] testified at trial[,] and his statements described an assault by [Appellant]. Moreover, his statements were relevant, as they showed [Appellant's] common scheme of abusing children under his care and [the] absence of mistake in S.B.'s death. [Sean B.'s] statements were reliable, consistent, spontaneous, contained terms expected to be used by a child of his age, and indicated a lack of motive to fabricate.

Trial Court Opinion, filed 9/2/16, at 44.

We find no abuse of discretion. *See Cox*, *supra*. In this regard, we conclude that Sean B.'s statements of Appellant's assaultive conduct towards him were relevant for the reasons provided by the trial court. Further, the facts amply demonstrate that the time, content, and circumstances of Sean B.'s statements provided sufficient *indicia* of reliability.

For instance, Sean B. made his statements initially spontaneously to Ms. Cobb, who was his grandmother, prior to the death of S.B. Ms. Cobb then responded appropriately by discussing the matter with Josephita and filing a private criminal complaint against Appellant. N.T., 1/27/16, 120-23. Moreover, Sean B. later repeated the statements to Detective Hammond after the death of S.B. Further, Sean B. used age-appropriate language and indicated no motive to fabricate. Accordingly, we conclude the trial court properly ruled that Sean B.'s prior out-of-court statements of abuse by Appellant were admissible under the tender years hearsay exception. *See Walter*, *supra*.

In his next issue, Appellant contends that he is entitled to a new trial as a result of the trial court's failure to grant his challenges for cause as to

- 16 -

prospective jurors number 12 and 42. Appellant contends that the questioning of both prospective jurors during *voir dire* revealed that the jurors could not render a fair, impartial, and unbiased verdict.

A criminal defendant's right to an impartial jury is explicitly guaranteed by Article I, section 9 of the Pennsylvania Constitution. The jury selection process is crucial to the preservation of that right....

It must be remembered the purpose of the *voir dire* examination is to provide an opportunity to counsel to assess the qualifications of prospective jurors to serve. It is therefore appropriate to use such an examination to disclose fixed opinions or to expose other reasons for disqualification. Thus, the inquiry must be directed at ascertaining whether the venireperson is competent and capable of rendering a fair, impartial, and unbiased verdict. The law also recognizes that prospective jurors were not cultivated in hermetically sealed environments free of all beliefs, conceptions, and views. The question relevant to a determination of qualification is whether any biases or prejudices can be put aside upon the proper instruction of the court.

A challenge for cause to service by a prospective juror should be sustained and that juror excused where that juror demonstrates through his conduct and answers a likelihood of prejudice. The decision whether to disqualify a venireman is within the discretion of the trial court and will not be disturbed on appeal absent a palpable abuse of that discretion.

Stated another way, the test of disqualification is the juror's ability and willingness to eliminate the influence of his scruples and render a verdict according to the evidence. This determination is to be made by the trial judge based on the juror's answers and demeanor and will not be reversed absent a palpable abuse of discretion.

*Commonwealth v. Penn*, 132 A.3d 498, 502 (Pa.Super. 2016) (footnote,

citations, quotation marks, and quotations omitted).[6]

Here, the record reveals Appellant challenged prospective jurors 12

and 42 for cause. Specifically, Appellant challenged prospective juror 12 for

cause after the juror indicated that he was not sure whether he could be

fully objective given the fact that the victim was a young child. N.T.,

1/26/16, at 60-63. Appellant challenged prospective juror 42 for cause after

the juror indicated that he believed it would be strange if a defendant did

not attempt to defend himself in trial given the nature of the charges. *Id.* at

174-80. After the trial court denied both challenges for cause, Appellant

used peremptory challenges to strike both prospective jurors. *Id.* at 64,

181.

In explaining the reasons it did not grant Appellant's challenges for

cause as to prospective jurors 12 and 42, the trial court indicated the

following:

> Although both jurors initially expressed opinions which
> indicated a possible difficulty in weighing the evidence and
> arriving at a verdict impartially, their answer to subsequent
> questioning by [the trial court] showed their willingness to

---

[6] We note that a challenge for cause should also be granted "'when the potential juror has such a close relationship, be it familial, financial or situational, with parties, counsel, victims, or witnesses, that the court will presume the likelihood of prejudice.'" *Penn*, 132 A.3d at 502 n.4 (quotation omitted). However, there is no indication that the prospective jurors at issue maintained a relationship such that the court must presume a likelihood of prejudice.

eliminate the influence of their scruples and render a verdict according to the evidence. [For instance,] [a]fter prospective juror 12 indicated his discomfort with the fact that the victim was a young child, the following exchange took place:

> THE COURT: [W]e would ask you to be able to set aside any feelings you might have about these charges and be fair to both sides. Clean sheet of paper. Nothing on it. You haven't heard any testimony. Seen any exhibits. Be fair to both sides? Can you do that?
>
> PROSPECTIVE JUROR 12: Yes, I can.

*Id.* at 58-59. Furthermore, after the issue was revisited during [Appellant's] examination of the [prospective] juror, and after the [trial court] had informed prospective juror 12 about the duties of a juror, the following exchange took place,

> THE COURT: Knowing that is what you have to do, can you set aside any initial feelings you might have about what I have read to you, because you haven't heard anything yet, and make your decision based upon the testimony and evidence that is presented to you during the course of the trial only?
>
> PROSPECTIVE JUROR 12: I believe that I can, yes.

*Id.* at 62. Thus, prospective juror 12 indicated that he was capable of eliminating any initial discomfort he may have felt and of rendering a fair, impartial, and unbiased verdict. Therefore, the [trial court] did not err when it did not dismiss prospective juror 12 for cause.

Moreover, while prospective juror 42 initially expressed surprise that a defendant in a murder case would not try to defend himself, he nonetheless readily indicated that he would be able to follow the applicable law and arrive at a fair and impartial verdict. Specifically, after the prospective juror expressed his surprise, the following exchange took place,

> THE COURT: Well, I know that, generally speaking some people would think that if they were charged with such a crime, they would want to have something to say, but the law in the United States, in all 50 states, is that the defendant doesn't have to do anything, or say anything, or put on any testimony, or put on any evidence. Because it's the Commonwealth's burden of proof that the defendant

is guilty beyond a reasonable doubt. It's their choice. It's not the choice of any of the rest of us. It's the defendant's choice, his choice alone, whether or not to say or do anything in the case. Understanding that is the law, can you follow the law?

PROSPECTIVE JUROR 42: Sure. I can follow the law.

*Id.* at 172. Further questioning on the subject by defense counsel and the district attorney confirmed that the prospective juror understood the Commonwealth's burden of proof and would be able to render a fair and impartial verdict accordingly. *Id.* at 174-80. Thus, the [trial court] did not err when it did not dismiss prospective juror 42 for cause.

Trial Court Opinion, filed 9/2/16, at 46-47 (quotation marks omitted).

We agree with the trial court's well-reasoned analysis and find no abuse of discretion in denying Appellant's challenges for cause as to prospective jurors 12 and 42. *See Penn*, *supra*.

In his next issue, Appellant contends that he is entitled to a new trial as a result of the trial court's restriction on his cross-examination of Commonwealth witness Tracey Cobb concerning an allegedly false allegation of rape Josephita made against Cobb's husband on Facebook. *See* N.T., 1/27/16, 158-81. Citing to Pa.R.E. 607(b), Appellant contends that he should have been permitted to cross-examine Ms. Cobb about the allegation since it impeached Josephita's credibility and tended to show that she blamed other people for her own conduct.

We find the following Pennsylvania Rules of Evidence to be relevant:

**Rule 607. Who May Impeach a Witness, Evidence to Impeach a Witness**

\*\*\*

**(b) Evidence to Impeach a Witness.** The credibility of a witness may be impeached by any evidence relevant to that issue, except as otherwise provided by statute or these rules.

Pa.R.E. 607.

### Rule 608. A Witness's Character for Truthfulness or Untruthfulness

\*\*\*

**(b) Specific Instances of Conduct.** Except as provided in Rule 609 (relating to evidence of conviction of crime),

(1) the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct; however,

(2) in the discretion of the court, the credibility of a witness who testifies as to the reputation of another witness for truthfulness or untruthfulness may be attacked by cross-examination concerning specific instances of conduct (not including arrests) of the other witness, if they are probative of truthfulness or untruthfulness; but extrinsic evidence thereof is not admissible.

Pa.R.E. 608.

In explaining the reasons it sustained the Commonwealth's objection to Appellant's cross-examination of Ms. Cobb, the trial court indicated the following:

> The Commonwealth argued...that [the allegation] was a collateral issue which was highly prejudicial and that [Appellant] was asking one witness to give her opinion on the credibility of another witness when determinations of credibility were the sole province of the jury....
>
> [The trial court] did not err when it did not allow [Appellant] to cross-examine [Ms.] Cobb regarding a rape allegation made by Josephita over Facebook against [Ms.] Cobb's husband. As [Appellant] was seeking to offer evidence for purposes of attacking the credibility of a witness who testified (Josephita), the admissibility of such evidence was governed by Pa.R.E. 608 and proof of specific incidents of conduct, such as a

particular allegation made during a conversation over Facebook, by either cross-examination or extrinsic evidence was prohibited.

Trial Court Opinion, filed 9/2/16, at 48-49. We find no abuse of discretion in this regard. *See Commonwealth v. Birch*, 532 Pa. 563, 616 A.2d 977 (1992) (indicating scope and limits of cross-examination are within the discretion of the trial court and will not be disturbed absent an abuse of that discretion).

In his next issue, Appellant contends that he is entitled to a new trial as a result of the trial court's denial of his motion for a mistrial after the prosecutor commented upon the redirect examination of Commonwealth witness Dr. Lawrence Dobrin that she had to address "some of the irrelevances we were just subjected to for the past 20 minutes." Appellant contends that the prosecutor's statement constituted prosecutorial misconduct requiring a new trial.

> The legal principles relevant to a claim of prosecutorial misconduct are well established. Comments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in [the jurors'] minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict.

*Commonwealth v. Thomas*, 618 Pa. 70, 79, 54 A.3d 332, 337-38 (2012) (quotation omitted). A prosecutor is permitted to respond to defense arguments with appropriate oratorical flair and not every unwise or intemperate remark made by a prosecutor mandates the grant of a new trial. *Commonwealth v. Brown*, 134 A.3d 1097 (Pa.Super. 2016).

- 22 -

In the case at bar, at the commencement of the prosecutor's redirect examination of Dr. Dobrin, the prosecutor stated, "I want to go back through a few things to sort of, I guess, point out some of the irrelevances we were just subjected to for the past 20 minutes." N.T., 12/1/16, at 81. Defense counsel moved for a mistrial on the basis the statement was highly prejudicial and unprofessional. *Id.* at 82. The prosecutor responded:

> Respectfully, Your Honor, I was prefacing where I was about to go, which was the fact that we just had about six questions that had nothing to do with the actual doctor's testimony. So I was trying to focus back on the things that actually had something to do with the doctor's testimony. We talked about DNA, fingerprints. We talked about the entire universe of the world. None of which had anything to do with why the doctor is here and qualified to testify. I was just trying to focus us back to why he's here.

*Id.* at 82-83. The trial court denied defense counsel's request for a mistrial. *Id.* at 83.

In explaining the reasons for its ruling, the trial court relevantly indicated the following:

> [T]he prosecutor's comments were merely oratorical flair made in fair response to [Appellant's] cross-examination of [Dr.] Dobrin. Despite [Dr.] Dobrin being called to testify as to his role in comparing the photographs of [Appellant's] teeth to the bite marks on S.B.'s body, [Appellant] cross-examined him as to how and when S.B.'s autopsy photographs were taken, a hypothetical database containing the dental impressions of everyone in the country, DNA evidence, fingerprint evidence, and the subjectivity of [Dr.] Dobrin's opinion. All of these subjects had little or no relevance to [Dr.] Dobrin's testimony on direct examination or his credibility as a witness and served only to distract the jury from evidence offered by [Dr.] Dobrin. Thus, the prosecutor's remark was fair response to [Appellant's] obfuscation of the evidence which incorporated oratorical flair to redirect the jury's

> attention back to the actual evidence presented. Furthermore, given the voluminous amount of evidence which implicated [Appellant] in S.B.'s death, this isolated and minor comment by the prosecutor [did not] have...the unavoidable effect of prejudicing the jury so that they could not weigh the evidence objectively and render a fair verdict.

Trial Court Opinion, filed 9/2/16, at 51. We agree with the trial court's reasoning and find no relief is due. **See Thomas**, **supra**.

In his final issue, Appellant contends that the imposition of separate sentences for the crimes of third-degree murder, EWOC, and aggravated assault amounted to an illegal sentencing scheme, as the court was bound to merge the latter two crimes as lesser-included offenses of third-degree murder. "A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law. Accordingly, our standard of review is plenary." **Commonwealth v. Snyder**, 870 A.2d 336, 349 (Pa.Super. 2005) (quotation marks and quotation omitted).

We begin our examination of Appellant's merger claim by reviewing the statutory provisions pertinent to his underlying convictions.

Regarding third-degree murder, the Crimes Code relevantly provides that "[a]ll other kinds of murder shall be murder of the third-degree." 18 Pa.C.S.A. § 2502(c). Section 2502(c) does not set forth the requisite *mens rea* for third-degree murder, however, Section 302(c) of the Crimes Code provides that "[w]hen the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto." 18

Pa.C.S.A. § 302(c). "To convict a defendant of the offense of third-degree murder, the Commonwealth need only prove that the defendant killed another person with malice aforethought." *Commonwealth v. Fisher*, 622 Pa. 366, 375, 80 A.3d 1186, 1191 (2013) (quotation and citation omitted).

Regarding EWOC, the Crimes Code relevantly provides that "[a] parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. 4304(a)(1).

Finally, regarding aggravated assault, the Crimes Code relevantly provides that "[a] person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1).

> Regarding the merger of sentences, the legislature has provided that:
>
> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765. "The statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are

included in the statutory elements of the other." ***Commonwealth v. Baldwin***, 604 Pa. 34, 39, 985 A.2d 830, 833 (2009).

> When considering whether there is a single criminal act or multiple criminal acts, the question is not "whether there was a 'break in the chain' of criminal activity." The issue is whether "the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes."

***Commonwealth v. Pettersen***, 49 A.3d 903, 912 (Pa.Super. 2012) (quotations omitted).

"In determining whether two or more convictions arose from a single criminal act for purposes of sentencing, we must examine the charging documents filed by the Commonwealth." ***Commonwealth v. Martinez***, 153 A.3d 1025, 1030-31 (Pa.Super. 2016) (citing ***Commonwealth v. Jenkins***, 96 A.3d 1055, 1060 (Pa.Super. 2014) (holding that we must determine whether the appellant's actions constituted a single criminal act, with reference to elements of the crime as charged by the Commonwealth)). ***See Commonwealth v. Kimmel***, 125 A.3d 1272, 1276 (Pa.Super. 2015) (*en banc*) (concluding merger of DUI charges and felony fleeing did not merge where the  affidavit of probable cause supplied the factual narrative of the appellant's DUI stop and subsequent flight-by-vehicle from the scene of the stop).

Initially, turning first to an analysis of the second portion of the Section 9765 merger test, we conclude that third-degree murder does not

subsume all of the statutory elements of EWOC. As indicated *supra*, the *mens rea* for third-degree murder is malice. **See Marquez**, **supra**. However, the *mens rea* for EWOC is a knowing violation of a duty of care, protection, or support. **Commonwealth v. Cottam**, 616 A.2d 988 (Pa.Super. 1992); 18 Pa.C.S.A. § 4303(a)(1). Further, whereas third-degree murder does not require proof of the victim's age, EWOC requires proof that the victim is "a child under 18 years of age." 18 Pa.C.S.A. § 4303(a)(1). Consequently, we conclude that Appellant's conviction for EWOC does not merge with third-degree murder as "all of the statutory elements of...the offense are [not] included in the statutory elements of the other." **Baldwin**, 604 Pa. at 39, 985 A.2d at 833.[7]

With regard to whether third-degree murder subsumes aggravated assault, our Supreme Court has held that aggravated assault is a lesser-included offense of third-degree murder. **See Commonwealth v. Musselman**, 483 Pa. 245, 396 A.2d 625 (1979). However, upon review of the information, criminal complaint, and affidavit of probable cause filed in

_____

[7] We note that EWOC does not merge with aggravated assault for sentencing purposes under the elements portion of the Section 9765 merger test. **See Commonwealth v. Baker**, 963 A.2d 495 (Pa.Super. 2008) (holding that merger of EWOC with aggravated assault was not warranted as all statutory elements of one offense did not coincide with elements of other offense).

the instant matter, we conclude the first portion of the Section 9765 merger test has not been met.

Here, the information listed the offense date of July 16, 2013, for each of the offenses and set forth a generic recitation of the statutory elements for each offense. However, in the criminal complaint, Detective Gary White indicated "[a]t 2220 S. 56th Street, [Appellant] intentionally, knowingly, recklessly, or negligently caused the death of S.B., age 4, by punching, kicking, and biting her *multiple times on multiple occasions*." Criminal Complaint, dated 9/20/13 (emphasis added). Moreover, in the affidavit of probable cause, Detective White averred the following:

> On Tuesday, July 16, 2013, at 2:50 a.m., police responded to [CHOP] for a report of a deceased child with suspicious injuries. Upon their arrival, police at this location were informed by the hospital staff that [S.B.], 4 [years old], was transported to the hospital by her mother, Josephita [ ], and was unresponsive and not breathing. The child was pronounced dead...by Dr. Posner who observed numerous old and new bruising to the face, back, neck and bite marks.
>
> There was a post-mortem examination performed on the remains of the decedent on 7/16/13 by Dr. Lieberman at the City of Philadelphia Medical Examiner's Office. Dr. Lieberman determined that based on his findings that the cause of death was a laceration to the liver caused by abdominal blunt force trauma and the manner of death is Homicide.
>
> A witness known to the Commonwealth of Penna and will be available at all court proceedings related the following in a summary to Detectives Crystal Williams [ ] and Gary White [ ] in the presence of her/his attorney, David Rudenstein, Esquire. The witness stated that on the night before the decedent was taken to the hospital he/she observed [Appellant] 26 [years old] punching the decedent in her back inside of 2220 S. 56th Street. The witness stated that he/she tried to block [Appellant] from hitting the decedent and she/he was also hit by his punches.

He/she stated that [Appellant] then left the residence and came back later. The witness stated that she/he was in the kitchen when she/he heard the decedent crying in the living room. He/she went into the living room and saw the decedent crying. He/she also observed [Appellant] with both of his hands up and they were in a fist and he put them down real fast. He/she stated that she asked the decedent what was wrong and she said, "My tummy hurts." The witness stated that the decedent started breathing hard and he/she got into [Appellant's] vehicle and [Appellant] drove them to [CHOP] where he dropped them off. He/she learned that the decedent had died from the hospital staff. The witness stated that [Appellant] would beat the decedent every time that he would be angry with her and that [Appellant] had broke the decedent's leg on one occasion.

On July 25, 2013, Dr. Dobrin, Chief Forensic Dentist, photographed the teeth of [Appellant] because [Appellant] would not allow impressions or wax bite of his teeth, but finally did allowed [sic] the photographs on a court order signed by Judge Lerner. Dr. Dobrin stated that as a result of his examination it is his opinion to a reasonable degree of medical certainty that the bite marks present on the decedent were produced by the dentition of [Appellant].

Affidavit of Probable Cause, dated 9/20/13.

This description comports with Josephita's trial testimony, as summarized by the trial court:

Josephita testified that, on the day S.B. was murdered, she was in the kitchen cooking when she and [Appellant] had an argument about her infidelity. Josephita further testified that [Appellant] was angered by Josephita's cheating and began punching and kicking S.B. Josephita stated that she did not tell him to stop because she was afraid and ashamed. Josephita further stated that the beating eventually stopped and [Appellant] left but then returned and started beating S.B. again. Josephita testified that she could hear S.B.'s screams from the kitchen and that, when she went to the living room, she saw that S.B. had a bite mark on her bottom lip. Josephita stated that she asked [Appellant] why he had bit S.B. but [Appellant] did not respond. Josephita further stated that, after the second beating stopped, [Appellant] left and S.B. was no longer breathing.

- 29 -

Trial Court Opinion, filed 9/2/16, at 9-10.

Applying pertinent authority, it is apparent from the criminal information, complaint, and affidavit of probable cause, as well as later reflected in the trial testimony, that the Commonwealth alleged criminal acts that constituted aggravated assault as distinct or delineated from the conduct that constituted third-degree murder. That is, the criminal complaint indicated Appellant "punch[ed], kick[ed], and bit[ ] [S.B.] *multiple times on multiple occasions*." Criminal Complaint, dated 9/20/13 (emphasis added). Further, the affidavit of probable cause describes the operative facts in such a way as to distinguish the specific conduct underlying the offense of aggravated assault (the beating which occurred prior to Appellant leaving the house with S.B. still alive) and the offense of third-degree murder (the beating which occurred after Appellant returned to the house resulting in S.B.'s "tummy hurting" and death). *See Pettersen*, 49 A.3d at 912 (holding merger is not required where "the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime") (quotation omitted)). Thus, we conclude the offenses of aggravated assault and third-degree murder were separate criminal acts for purposes of avoiding merger at sentencing. *See Kimmel*, *supra*; *Jenkins*, *supra*.

For all of the foregoing reasons, we affirm the judgment of sentence.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/8/2017