J-S13008-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID EDWARD CASTRO, JR. | |
| Appellant | No. 1245 MDA 2019 |

Appeal from the PCRA Order Entered July 1, 2019
In the Court of Common Pleas of York County
Criminal Division at No: CP-67-CR-0007993-2015

BEFORE: STABILE, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 03, 2020**

Appellant, David Edward Castro, Jr., appeals from an order denying relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, and denying DNA testing under 42 Pa.C.S.A. § 9543.1. Appellant was convicted of conspiracy[1] to burglarize a residence and rob its occupants. He argues that (1) newly discovered evidence demonstrates he was too intoxicated to commit conspiracy, and (2) DNA testing would establish his actual innocence. We disagree, and we affirm.

On the evening of November 6, 2015, Appellant, Domingo Velez and Shane Steck attended a party hosted by Sarah Gladfelter. N.T. 9/6/16-9/7/16, at 96. Steck left the party to get cigarettes, but while in his car, his

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 903.

wife telephoned him and told him to return home immediately. *Id.* at 97. When Steck entered his house, two armed men were holding his wife and three children hostage. *Id.* The intruders robbed Steck of cash and pills, tied him up, placed him and his wife in the basement, and left. *Id.* at 98.

After freeing himself, Steck picked up his brother-in-law, Lekeho White, and drove back to the party to speak with Appellant and Velez. *Id.* at 98-99. The four men decided to get Steck's money back "by any means necessary," and they drove to 730 Manor Street, where Steck believed the robbers might be. *Id.* at 99-101. Steck drove with White in the passenger seat and Velez and Appellant in the back seat. Steck parked the car across the street from the target household and waited while the other men, including Appellant, approached the house. Appellant and Velez wore masks, and White and Appellant took bats with them. *Id.* at 100, 125, 184-85.

White kicked in the door of the residence. *Id.* at 67, 186. Inside, Damion Beck was spending the night with his friend, Nathanial Dubbs. *Id.* at 85. Dubbs' mother, Tina, was in the living room while the boys slept upstairs. *Id.* at 86. Also present in the house were Dubbs' three sisters and his oldest sister's boyfriend. *Id.* at 67. It is undisputed that none of these individuals were involved in the robbery at Steck's house.

Beck and Dubbs were awakened by the sound of a loud "bang," followed by the sound of Dubbs' mother screaming. *Id.* at 68. Dubbs grabbed a knife and went downstairs with Beck. *Id.* at 68-69. Beck opened the door so that Dubbs could peer outside. *Id.* at 71-72. Dubbs saw a person standing

- 2 -

outside, wearing a mask, hoodie, and jeans, and began to retreat into the house. *Id.* at 72, 73. Beck was hit with a black object, and he retreated into the kitchen while Dubbs hid around a wall. *Id.* When Dubbs saw White's feet beside the doorframe, he reached around the wall, stabbed him several times in his upper back and pushed him toward the door. *Id.* at 74-75. The intruders rushed out of the home and returned to the car with their bats and masks. *Id.* at 103, 187.

Steck sped White to the hospital with the other men in the car. *Id.* at 103-04. Two police officers apprehended the men upon their arrival at the hospital. One officer, Officer Haggarty, testified that none of the vehicle's occupants appeared intoxicated. *Id.* at 139. The second officer, Officer Ebersole, observed three persons standing next to the vehicle along with hospital security. He testified that "none of them" appeared intoxicated. *Id.* at 177. They all "seemed coherent, able to stand, able to converse and talk. I didn't smell any alcohol. I had no reason to believe anyone was intoxicated." *Id.* A third officer, Officer Roosen, drove to the hospital, where he observed Appellant detained by Officers Haggarty and Ebersole. He also saw "a lot of blood in the vehicle." *Id.* at 148.

The officers placed the men in separate cars and obtained Steck's consent to search his car. *Id.* at 104, 109-10. The police recovered two baseball bats, masks, and multiple knives from the passenger compartment

- 3 -

and trunk of Steck's car.[2] *Id.* at 143, 148. When asked about Appellant's condition during this episode, Steck indicated that Appellant was not drunk. *Id.* at 110-11.

Officer Roosen interviewed Appellant at police headquarters and observed that he was "lackadaisical and indifferent . . . but didn't seem intoxicated." *Id.* at 153-54. Appellant stated to Officer Roosen that "he didn't know where they ended up picking him up but that he was drunk and tired and was trying to go to sleep in the car and that they went to the hospital and didn't have any knowledge of the incident." *Id.* at 154. Officer Roosen replied to Appellant "that I didn't think it was very believable that if somebody was stabbed and bleeding profusely and probably a lot of commotion going on in the car, there's somebody sleeping a foot away from all that." *Id.*

At trial, Steck, Velez and White testified on behalf of the Commonwealth and identified Appellant as a participant in the home invasion at 730 Manor Street. *Id.* at 101-03, 124-26, 186. Steck and Velez admitted that they were offered plea bargains for their testimony. *Id.* at 109, 186. White contended that he did not know whether he received anything in return for his testimony, but defense counsel brought out that his sentence was beneath the Sentencing Guidelines. *Id.* at 128-29.

On cross-examination, Velez admitted that he wrote a letter to Appellant's attorney stating that Appellant had nothing to do with the home

---

[2] Officer Roosen testified that he did not have any evidence recovered from the vehicle tested for DNA. *Id.* at 158.

invasion because he was drunk and asleep in the backseat of Steck's car. *Id.* at 190-91. In the same letter, Velez wrote that he told the police on the night of the incident that Appellant had nothing to do with the incident. *Id.* at 192. Appellant's attorney introduced the letter as a defense exhibit and had Velez identify its content. *Id.* at 191-92.

Appellant did not testify during trial. His attorney argued to the jury that Appellant was unconscious in the back seat, too drunk to plan or commit the home invasion. According to counsel, the other males in the car, Steck, White, and Velez, were corrupt and polluted sources, because they actually committed the crimes and received reduced sentences for testifying against Appellant as Commonwealth witnesses. Counsel continued that Beck and Dubbs, who fought off the home invasion, could not identify the intruders because they were wearing masks. As further proof of Appellant's lack of involvement, counsel pointed to Velez's letter that Appellant did not participate in the incident. *Id.* at 208-26.

The jury found Appellant guilty on all counts, including conspiracy to commit burglary, conspiracy to commit criminal trespass, conspiracy to commit simple assault, conspiracy to commit robbery and possession of an instrument of crime ("PIC"). *Id.* at 266-67. On October 5, 2016, the court sentenced Appellant to 6-12 years' imprisonment for conspiracy to commit burglary. The PIC charge was dismissed on the date of sentencing, and the remaining counts merged for purposes of sentencing. Appellant filed timely post-sentence motions, which the court denied on December 6, 2016.

Appellant filed a direct appeal to this Court but subsequently discontinued it in order to file a PCRA petition.

Appellant filed a timely *pro se* PCRA petition. The PCRA court appointed counsel, who filed an amended PCRA petition requesting relief on the basis of newly discovered evidence. On December 7, 2018, the PCRA court entered a notice of intent to dismiss pursuant to Pa.R.Crim.P. 907. In response, Appellant filed a second amended PCRA petition and a motion under 42 Pa.C.S.A. § 9543.1 alleging that defense counsel during trial was ineffective for failing to request DNA testing of the bats, masks and knives used in the incident. On June 28, 2019, the PCRA Court denied Appellant's second amended PCRA petition and motion for DNA testing. This timely appeal followed.

Appellant raises two issues in this appeal, which we re-order for the sake of convenience:

> [1.] Did the [PCRA] Court err in finding that Appellant was not entitled to relief based upon after-discovered evidence (the proposed testimony of John Larkin) when such evidence met the necessary legal requirements?
>
> [2.] Did the [PCRA] Court err in finding that trial counsel was not ineffective as that term is defined for not pursuing DNA testing of the masks, baseball bats and knives found in connection with the alleged crimes of which Appellant was charged?

Appellant's Brief at 4.

In his first argument, Appellant contends that the PCRA court erred by denying his second amended PCRA petition, in which Appellant sought a new

trial on the basis of after-discovered evidence, the testimony of a new eyewitness, John Larkin. No relief is due.

The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. **Commonwealth v. Roney**, 79 A.3d 595, 604 (Pa. 2013). To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, the petitioner must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing. **Id.** at 604-05.

Appellant claims that in January 2017, several months after trial, Gladfelter, who hosted the party Appellant attended on the evening of the incident, informed him that Larkin was willing to testify that he saw several individuals carrying him to a car prior to the home invasion. Appellant listed Larkin's address in his original PCRA petition and alleged in his first amended petition that he "was able to communicate with Mr. Larkin." Amended PCRA Petition, at ¶ 11. Appellant contends that Larkin's testimony supports his defense that he was too intoxicated to have committed the charged offenses and qualifies as after-discovered evidence that would have changed the outcome of trial.

The petitioner may obtain relief under the after-discovered evidence subsection of the PCRA if he pleads and proves that his conviction or sentence resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). The petitioner must demonstrate that the new evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted. ***Commonwealth v. Small***, 189 A.3d 961, 972 (Pa. 2018). Failure to meet any of these requirements is fatal to the request for a new trial. ***Id.***

Larkin's proposed testimony is cumulative of evidence presented during trial. To be more than "merely corroborative or cumulative," the evidence must be "of a different and higher grade or character, though upon the same point, or of the same grade or character on a different point[.]" ***Id.*** at 974 (internal quotations omitted). Larkin's assertion that he saw Appellant being carried to a car on the evening of the home invasion is no higher in quality than Velez's admission that Appellant was drunk and asleep in Steck's car. Arguably, Larkin's assertion is lower in grade than Velez's admission, since Larkin only saw Appellant at one unspecified point during the evening, while

Velez observed Appellant throughout the entire course of events, including the time period in which the conspiracy was hatched and carried out.

Nor would Larkin's testimony have likely resulted in a different verdict if a new trial were granted. The three men who drove with Appellant to 730 Manor Street—Steck, White, and Velez—all testified that Appellant took part in the conspiracy and home invasion. Three other witnesses, the police officers, testified that Appellant did not appear intoxicated. Officers Haggarty and Ebersole, who were at the hospital where Steck drove immediately after the home invasion, testified that none of the car's occupants appeared intoxicated. Officer Ebersole testified that all of the men (including Appellant) were standing by the car at the hospital, thus refuting Appellant's claim that he was too drunk to stand upright. A third officer, Officer Roosen, interviewed Appellant at police headquarters and observed that he appeared indifferent but not intoxicated. Appellant countered this testimony with his own evidence of intoxication (Velez's letter and Appellant's self-serving statement at police headquarters) and attacks on the credibility of his cohorts for obtaining lighter sentences by cooperating with the Commonwealth. The jury balanced all of this evidence and returned guilty verdicts on all counts. Since Appellant lost at trial despite presenting evidence of his intoxication, it is unlikely that Larkin's testimony on this subject would have made any difference.

For these reasons, the court properly dismissed Appellant's second amended PCRA petition.

In his next argument, Appellant complains that the PCRA court erred by dismissing his motion alleging that defense counsel was ineffective for failing to request DNA testing of the masks, baseball bats and knives used in the home invasion. No relief is due.

Post-conviction DNA testing falls under the aegis of the PCRA, so our standard of review permits us to consider only whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error. **In Re Payne**, 129 A.3d 546, 553-54 (Pa. Super. 2015) (*en banc*). Further, where the resolution of an appeal involves statutory construction, which involves a pure question of law, we review that aspect of the trial court's decision *de novo* and our scope of review is plenary. **Id.**

Section 9543.1 prescribes in relevant part:

(a) Motion.—

(1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment . . . may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2) The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date of the motion. **If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing**

**because his client was indigent and the court refused the request despite the client's indigency.**

...

(c) Requirements.—In any motion under subsection (a), under penalty of perjury, the applicant shall:

(1)(i) specify the evidence to be tested;

(ii) state that the applicant consents to provide samples of bodily fluid for use in the DNA testing; and acknowledge that the applicant understands that, if the motion is granted, any data obtained from any DNA samples or test results may be entered into law enforcement databases, may be used in the investigation of other crimes and may be used as evidence against the applicant in other cases.

(2)(i) assert the applicant's **actual innocence** of the offense for which the applicant was convicted;

...

(d) Order.—

(1) Except as provided in paragraph (2), the court shall order the testing requested in a motion under subsection (a) under reasonable conditions designed to preserve the integrity of the evidence and the testing process upon a determination, after review of the record of the applicant's trial, that the:

(i) requirements of subsection (c) have been met;

(ii) evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been altered in any material respect; and

(iii) motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice.

(2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's

trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:

(i) would establish the applicant's **actual innocence** of the offense for which the applicant was convicted; ...

*Id.* (emphasis added).

The PCRA court properly denied Appellant's motion for DNA testing because he failed to satisfy the threshold requirements of Section 9543.1(a)(2).[3] The bats, masks and knives that Appellant seeks to have tested were discovered and available before Appellant's trial. Moreover, DNA testing technology was available at the time of Appellant's trial in 2016, the jury reached its verdict after January 1, 1995, and the trial court did not refuse a request for funds for DNA testing. *Commonwealth v. Walsh*, 125 A.3d 1248, 1257 (Pa. Super. 2015) (defendant convicted of aggravated assault for using hammer to strike victim did not meet threshold requirements for post-conviction DNA testing, where hammer was discovered and available before trial, DNA testing and technology was available at time of trial, jury reached its verdict after January 1, 1995, and trial court did not refuse a request for funds for DNA testing).

Appellant also failed to satisfy the standard of "actual innocence" under Section 9543.1(d)(2)(i). The potential absence of the petitioner's DNA in

---

[3] Although the Commonwealth did not raise Appellant's failure to satisfy Section 9543.1(a)(2) in its brief, we may affirm for any valid reason in the record, regardless of whether the appellee raises it. *Commonwealth v. Moore*, 937 A.2d 1062, 1073 (Pa. 2007).

tested materials, by itself, cannot satisfy the actual innocence standard. *Payne*, 129 A.3d at 558; *see also Walsh*, 125 A.3d at 1255 ("in DNA testing cases, an absence of evidence is not evidence of absence"). Moreover,

> the quantum of evidence necessary to satisfy Section 9543.1(d)(2)(i) above and beyond the absence of the petitioner's DNA has been, and should continue to be, determined on a case-by-case basis, as circumstances dictate. Such circumstances might include the presence of another person's DNA, but not necessarily so. It is at least conceivable that certain circumstances or facts, in addition to or in conjunction with the absence of the petitioner's DNA in a particular location, may satisfy Section 9543.1(d)(2)(i).

*Payne*, 129 A.3d at 559.

In this case, Appellant does not argue that the potential absence of DNA evidence from the bats, masks and knives, standing alone, justifies DNA testing. Nor could he, given *Payne's* holding that the absence of DNA evidence does not establish innocence by itself. *Id.* at 558. Instead, Appellant argues that the absence of his DNA would establish actual innocence when viewed in conjunction with (1) the Commonwealth's reliance on three "corrupt and polluted sources," Steck, White, and Velez, who obtained plea bargains for their testimony against Appellant, and (2) the fact that Beck and Dubbs could not identify the persons trying to break into the 730 Manor Street residence because they were wearing masks. Appellant's Brief at 16-17. We disagree for three reasons.

First, DNA evidence was irrelevant to the conspiracy charges against Appellant. To prove conspiracy, the Commonwealth must establish that: (1)

- 13 -

the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a "co-conspirator") to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. ***Commonwealth v. Golphin***, 161 A.3d 1009, 1019 (Pa. Super. 2018) (citing 18 Pa.C.S.A. § 903). It is not necessary for the defendant to commit the overt act; it can be committed by a co-conspirator. ***Id.*** The presence of Appellant's DNA on the bats, masks or gloves was not necessary to prove any element of conspiracy, *i.e.*, that (1) Appellant intended to commit or aid in the home invasion, (2) Appellant agreed with the other occupants of the car to engage in the crime, and (3) either Appellant or one or more co-conspirators committed an overt act in furtherance of the home invasion. Neither would the absence of DNA have disproved any of these elements.

Second, DNA evidence would not have refuted the testimony of multiple Commonwealth witnesses. Three witnesses, Steck, White and Velez, testified that Appellant took part in the agreement to commit the home invasion. In addition, three police officers testified that Appellant did not appear intoxicated shortly after the home invasion, which demonstrates that Appellant was fully capable of conspiring to commit the home invasion. The absence of Appellant's DNA on the bats, masks and gloves would have done nothing to overcome this body of testimony.

Third, during trial, Appellant insisted that he was too drunk to participate in the conspiracy, and he presented Velez's letter and his statement to Officer Roosen in support of this position. The jury rejected this argument in finding Appellant guilty. We cannot see how the absence of DNA from the bats, masks and gloves would have changed the jury's view of Appellant's intoxication claim.

Accordingly, we affirm the order dismissing Appellant's second amended PCRA petition and motion for DNA testing without a hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/03/2020