J-S48024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                        :          PENNSYLVANIA
                                          :
           v.                          :
                                          :
                                          :
SEAN CAINES,                      :
                                          :
              Appellant        :     No. 1256 EDA 2018

Appeal from the Judgment of Sentence December 4, 2017
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0001295-2016

BEFORE:   BOWES, J., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SHOGAN, J.:         **FILED OCTOBER 17, 2019**

Appellant, Sean Caines, appeals from the judgment of sentence entered on December 4, 2017, in the Montgomery County Court of Common Pleas. We affirm.

In its opinion, the trial court set forth the relevant facts and procedural history as follows:

> On December 15, 2015, [K.C. left her children in Appellant's care] while she ran errands. Notes of Testimony ("N.T.") Apr. 6, 2018 at 25. The three children were [ages eight, six, and three] at the time[.]  [The eight-year-old child] was at a friend's house during the incident.  [Appellant told K.C.] that he intended to work out in the basement and the children could play in the basement during that time. Id. at 27. K.C. prepared to leave the home. Id. Upon realizing that she forgot insurance paperwork needed for her errand, [K.C.] came back into the home and attempted to print the document on the printer in [an] upstairs bedroom. Id. at 28.

---

[*] Retired Senior Judge assigned to the Superior Court.

[K.C.] encountered difficulty and went to the basement to seek [Appellant's] assistance. Id. When [K.C.] entered the basement, she observed [Appellant] sitting on the end of his workout bench with [the six-year-old victim ("Child")] straddling [Appellant's] lap and [Appellant was] moving [Child] up and down on his genitals. Id. at 29. [Child's] arms [were] around [Appellant's] neck. Id. at 32. [Appellant's] legs were spread and he had his hands on [Child's] hips. Id. Both [Appellant] and [Child] were fully clothed. Id. at 75, 163. When [Appellant] saw [K.C.], he pushed [Child] onto the ground and attempted to [act] as if he and [Child] were playing. Id. at 30. [Appellant] remained seated on the end of the bench and placed his elbows on his knees in such a way that [K.C.] could not see whether or not [Appellant] had an erection. Id. at 30, 33. [K.C.] asked [Appellant] to print the paper that she had difficulty printing[,] and he went upstairs to do so. Id. at 86. After printing the paper, [Appellant] returned to the basement to work out. Id.

K.C. and [her] children went upstairs to the family room. Id. at 87. [K.C. asked Child] about what [K.C.] had seen. Id. at 36-37. [K.C.] asked [Child] what was happening in the basement. Id. at 45. [Child] indicated that [Child] had been sitting on [Appellant's]. Id. [Child] indicated that [Appellant] moved [Child] up and down on his penis. Id. at 46. [Child] indicated that this had also happened "I don't know, three times, lots and lots of times." Id. [Child] indicated that when [Child] asked [Appellant] why he was doing it, [Appellant] said "because if feels good." Id. [K.C.] testified that she had never seen [Child] sit on [Appellant's] lap in that manner before this incident. Id. at 72.

[K.C.] told [Child] that [Child] had not done anything wrong, but what happened to [Child] was wrong. Id. at 46. When [Appellant] came out of the basement to take a shower, [K.C.] left the home with all three of [the] children and went to a friend's house. Id. at 47. [K.C.] reported the incident to police the next day from a hotel. Id. at 52. [Child] was interviewed by Mission Kids on December 21, 2015. Id. at 107.

At trial, [Child] testified that[, while] playing in the basement … [Appellant] asked [Child] to come over to him and picked [Child] up and rubbed [Child] against his private parts in the basement. Id. at 160-161, 163-165. [Child] testified that it happened on at least one other occasion in [a] bedroom. Id. at 168-170. In the bedroom, [Child] asked [Appellant] why he was

- 2 -

doing it and he told [Child] that it felt good. Id. at 170. [Child] testified [to being] sad and mad as a result of [Appellant's] actions. Id.

[Appellant] testified in his own defense. He testified that on December 15, 2015[,] he was in the basement with two of [the] children. N.T., Apr. 7, 2017 at 11. He testified that he was laying on his back on his workout bench, stretching before his workout when [Child] climbed on to him, which he said was not unusual. Id. at 13. He stated that [Child] straddled him as he continued to stretch his back. Id. [Appellant asserted t]he second child attempted to climb on top of him as well, at which point he sat up to begin his workout. Id. He testified that he put his hand under [Child's] butt and bounced [Child] up and down simulating a pony ride. Id. at 14. [Appellant] testified that [Child] was seated midway on his thighs. Id. at 33. [Appellant] testified that he frequently played with [the] children in a physical manner. Id. at 36. He further testified that he told [Child] that "it feels good" weeks prior to the date of the instant offense in relation to where [Child] was sitting on his stomach while he was laying on his bed with K.C. present in the room. Id. at 48. He stated that he told [Child] it did not feel good for [Child] to sit on his stomach, it felt good if [Child] sat lower, on his hip area. Id.

Following a jury trial, [Appellant] was found guilty of one count of Indecent Assault-Person under 13[1], one count of Endangering the Welfare of a Child[2] and one count of Corruption of Minors.[3] On December 4, 2017, [the trial court] imposed three, concurrent sentences of 11 ½ to 23 months in the county correctional facility. [Appellant] filed a post sentence motion and supplement thereto, which were denied by Order of March 29, 2018. This timely appeal followed. By Order of April 30, 2018, [Appellant] was directed to produce a statement of errors pursuant to Pa. R.A.P. 1925 (b); he has since complied with that directive.

[1] 18 Pa. C.S.A. § 3126 (a)(7).
[2] 18 Pa.C.S.A. § 4304.
[3] 18 Pa.C.S.A. § 6301 (a)(1)(ii).

Trial Court Opinion, 11/14/18, at 1-4.

On appeal, Appellant presents the following issues for this Court's consideration:

1. Did the trial court err in denying [Appellant's] Motion to Exclude Testimony based on taint?

2. Did the trial court err in admitting the hearsay statements of [Child], where those statements did not meet the requirements of the Tender Years exception?

Appellant's Brief at 6.

In Appellant's first issue, he asserts that the trial court erred in denying his motion to exclude Child's testimony because that testimony was tainted. Appellant's Brief at 20. After review, we disagree.

It is well settled that the admissibility of evidence is left to the discretion of the trial court, and the trial court's determination will not be reversed absent an abuse of that discretion. **Commonwealth v. Leaner**, 202 A.3d 749, 773 (Pa. Super. 2019) (citation omitted). Additionally, a witness's competency to testify is within the trial court's discretion. **Commonwealth v. Davis**, 939 A.2d 905, 906-907 (Pa. Super. 2007).

As a general rule, every person is presumed competent to be a witness. **Commonwealth v. Adams-Smith**, 209 A.3d 1011, 1021 (Pa. Super. 2019) (quoting **Commonwealth v. Delbridge**, 855 A.2d 27, 39 (Pa. 2003)). As noted above, Appellant avers that Child's testimony was tainted. Appellant's Brief at 20. Taint is defined as "the implantation of false memories or distortion of actual memories through improper and suggestive interview techniques[.]" **Delbridge**, 855 A.2d at 30. "[T]aint is a legitimate question

- 4 -

for examination in cases involving complaints of sexual abuse made by young children." *Id.* at 39.

This Court has also explained the distinction between credibility and competency and the burden on a party alleging tainted recall:

> A competency hearing concerns itself with the minimal capacity of the witness to communicate, to observe an event and accurately recall that observation, and to understand the necessity to speak the truth. A competency hearing is **not** concerned with credibility. Credibility involves an assessment of whether ... what the witness says is true; this is a question for the fact finder. An allegation that the child witness' memory of the event has been tainted raises a red flag regarding competency, not credibility. Where it can be demonstrated that a witness' memory has been affected so that their recall of events may not be dependable, Pennsylvania law charges the trial court with the responsibility to investigate the legitimacy of such an allegation.

[*Delbridge*,] 855 A.2d at 40 (emphasis added). Furthermore,

> In order to trigger an investigation of competency on the issue of taint, the moving party must show some evidence of taint. Once some evidence of taint is presented, the competency hearing must be expanded to explore this specific question. During the hearing the party alleging taint bears the burden of production of evidence of taint and the burden of persuasion to show taint by **clear and convincing evidence**. Pennsylvania has always maintained that since competency is the presumption, the moving party must carry the burden of overcoming that presumption.

*Adams-Smith*, 209 A.3d at 1021 (quoting *Delbridge*, 855 A.2d at 40) (emphasis added).

The trial court addressed Appellant's first issue as follows:

Instantly, [Appellant] alleged that [K.C] spoke to [Child] on at least two occasions prior to [Child's] interview at Mission Kids, thereby tainting [Child's] memory of the incident. N.T., Motion to Exclude Testimony Based Upon Taint, Apr. 4, 2017 at 9-17. [Appellant] also alleged that [K.C.'s] own childhood experience influenced the way in which she questioned [Child].[4] Id. at 9. The [c]ourt allowed [Appellant] to present testimony in an attempt to meet his initial burden to show some evidence of taint. The [c]ourt also watched the video of [Child's] interview by a forensic interviewer at Mission Kids.

> [4] The parties stipulated that when she was a child, K.C. was groped by an older child in her neighborhood. Id. at 84.

K.C. testified at the hearing that she spoke to [Child] on two occasions before the Mission Kids interview. Id. at 54. She testified that on the day of the incident, December 15, 2015, she spoke to [Child] upstairs in the master bedroom. Id. at 46. She asked [Child] questions in a calm manner, as if everything was normal. Id. at 48-49. K.C. did not tell [Child] what she had witnessed when she walked down the basement stairs, she only asked [Child] for information about what happened. Id. at 49. [Child] hunched up and would not make eye contact with [K.C.]. Id. [Child's] demeanor remained more serious than normal throughout the conversation. Id. at 49-50. K.C. asked [Child] what happened with [Appellant] in the basement. Id. [Child] indicated that [Child was] sitting on [Appellant's] lap. Id. at 55. When asked where on his lap, [Child] indicated that [Child was] sitting on [Appellant's] penis and that [Appellant] moved [Child] up and down on his penis. Id. K.C. asked [Child] if [Appellant] ever said anything when this was happening and [Child] indicated that one time [Child] asked [Appellant] why and he said because it feels good. Id. [Child] told K.C. that this happened on more than one occasion, "three or four times." Id. K.C. thanked [Child] for speaking with her and they went downstairs to watch television. Id. At the end of the conversation [Child] and K.C. returned to the living room area where the other two children were watching television. Id. at 52. K.C. and the children ultimately left the home that evening. Id. On December 16, 2015, K.C. gave a statement to the State Police. Exhibit DS-1.

On the morning of December 19, 2015, [Child] climbed in bed with K.C. Id. at 53. K.C. asked Child if they could talk about what happened, and [Child] said no, indicating that their stuffed animal would hear them. Id. at 56-57. They made earmuffs out of a sock for the stuffed animal. Id. at 57. K.C. asked [Child] if [Child] sat on [Appellant's] lap in that manner by choice. Id. [Child] said no, that [Appellant] asked [Child] to come sit on him. Id. [Child] demonstrated how [Appellant] motions for [Child] to come over and sit on his lap. Id. K.C. next asked [Child] if it was like when she and [Child] wrestle and [Child] said it was nothing like that. Id. at 57-58. She again asked [Child] if [Appellant] said anything when this was happening, [Child] indicated that it is mostly peace and quiet when it happens but that one time he did say he did it because it feels good. Id. at 58. The conversation ended at this point. Id. K.C. memorialized the conversation in the notes application on her phone and also texted it to herself. Id.; Exhibits CS-2, CS-3.

Joanna Crocetto, the forensic interviewer from Mission Kids also testified regarding the protocol that she follows when conducting a child interview. Mission Kids interviews are designed to minimize the number of times a child has to recount an incident of abuse. Id. at 27. At the time of the interview, a case worker from the office of children and youth, a detective from the Montgomery County Detective bureau, a detective from the jurisdiction in which the alleged abuse occurred, and an Assistant District Attorney [were] all present for the interview and observe[d] the interview in real time via video feed. Id. at 28. Ms. Crocetto spoke to K.C. to obtain her consent for the interview, but pursuant to Mission Kids policy, she did not obtain any information concerning the allegations from K.C. Id. at 31. Once obtaining consent from K.C., Ms. Crocetto interviewed [Child] and employed Mission Kids protocol for questioning which included, *inter alia*, rapport building with [Child], review of the rules for the interview, review of the difference between a truth and a lie, and basic questions about family before transitioning into questions about the allegations of abuse. Id. at 33-34. The interview itself is conducted by asking the child open-ended questions. Id. at 34. Ms. Crocetto also stated[:]

> from my experience of interviewing at Mission Kids, ... with most kids, they talk about who they've talked about it with when I ask questions around who have you talked about this with in terms of who did you tell

> or did you tell anyone else. They may also actually talk about a certain part of their narrative and say that someone told them to say that.
>
> Id. at 36. [Child] did not make any such statements in [the] videotaped interview. Regarding the video, the [c]ourt noted that it was clear that [Child] had spoken to [K.C.] prior to the interview, but that there was no indication that [Child] had been coached in any way. Id. at 109-110.
>
> Based on the testimony of K.C., K.C.'s statement to police, the testimony [of] Joanna Crocetto (Mission Kids Forensic Interviewer), and the [c]ourt's review of the actual interview of [Child], the [c]ourt found that [Appellant] did not meet his burden of establishing taint by clear and convincing evidence, as would warrant the expansion of the competency hearing to question [Child] about taint.[5] The testimony elicited and the video clearly show the consistency in [Child's] story and did not establish any evidence of taint. Therefore, this [c]ourt did not err in denying [Appellant's] motion to exclude [Child's] testimony because of taint.
>
> _____
> [5] A competency hearing was conducted prior to [Child's] testimony at trial. N.T., Apr. 6, 2017 at 125-140.

Trial Court Opinion, 11/14/18, at 7-10.

We agree with the trial court's conclusion. Joanna Crocetto, the forensic interviewer from Mission Kids, testified concerning her interview with Child and the method she employs when interviewing a child generally. N.T., 4/4/17, at 32-38. Ms. Crocetto discussed her use of open-ended questions to allow for accurate answers. *Id.* at 34. The open-ended questions enabled Child to "own" the answers and to provide detail. *Id.* Additionally, K.C. testified that although she discussed with Child the events that led to criminal charges against Appellant, she did not provide Child with an opinion. *Id.* at

49. Rather, K.C. testified that she asked Child what occurred in the basement, an open-ended question, and Child provided the details concerning the times Appellant touched her in a sexual manner. *Id.* at 55.

The trial court also conducted a competency hearing outside the presence of the jury. N.T., 4/6/17, at 127-140. The Assistant District Attorney, Appellant's trial counsel, and the trial court asked Child questions. Child explained the difference between the truth and a lie and knew it was important to tell the truth. *Id.* at 130-132.

The trial court concluded that Child was consistent when recounting Appellant's assault, Child was not coached, and there was no taint. Trial Court Opinion, 11/14/18, at 10. After review, we agree, and we conclude there was no abuse of discretion in the trial court's denial of Appellant's motion to exclude Child's testimony based on taint.

Next, Appellant avers that the trial court abused its discretion in allowing K.C. to testify about out-of-court statements made by Child. Appellant's Brief at 23. Specifically, Appellant asserts that K.C.'s testimony regarding Child's statements did not meet the requirements of the tender-years exception to the rule against hearsay because there were insufficient *indicia* of reliability. *Id.* at 23-24. We conclude that Appellant is entitled to no relief.

At the outset, we reiterate that the admissibility of evidence is left to the discretion of the trial court, and the trial court's determination will not be disturbed absent an abuse of discretion. *Leaner*, 202 A.3d at 773. Hearsay

is defined as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers into evidence to prove the truth of the matter asserted in the statement." ***Commonwealth v. Golphin***, 161 A.3d 1009, 1022-1023 (Pa. Super. 2017) (quoting Pa.R.E. 801(c)). "Hearsay is not admissible except as provided by the Pennsylvania Rules of Evidence, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." ***Id.*** at 1023 (quoting Pa.R.E. 802).

However, 42 Pa.C.S. § 5985.1 created an exception to the prohibition on hearsay under limited circumstances. At the time of Appellant's trial, Section 5985.1 provided as follows:

> **(a) General rule.—**An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger,[1] describing any of the offenses enumerated in 18 Pa.C.S. [Chapters 25, 27, 29, 31, 35, and 37], not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:
>
> > (1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
> >
> > (2) the child either:
> >
> > > (i) testifies at the proceeding; or
> > >
> > > (ii) is unavailable as a witness.

---

[1] We reiterate that Child was six year old at the time of the assault. Trial Court Opinion, 11/14/18, at 1; Criminal Complaint, 2/5/16, at unnumbered 4.

***Golphin***, 161 A.3d at 1023 (quoting 42 Pa.C.S. § 5985.1(a)).[2]

"A statement admitted under the tender years exception must possess sufficient *indicia* of reliability, as determined from the time, content, and circumstances of its making." ***Golphin***, 161 A.3d at 1023 (citation omitted).

> The Tender Years Act concerns the admissibility of out-of-court statements made by a child victim or witness to third parties. The admissibility of this type of hearsay is determined by assessing the particularized guarantees of trustworthiness surrounding the circumstances under which the statements were uttered to the person who is testifying. To determine whether a child's out-of-court statements are admissible under the Tender Years Act, a trial court must assess the relevancy of the statements and their reliability in accordance with the test enunciated in ***Idaho v. Wright***, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Although the test is not exclusive, the most obvious factors to be considered include the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age and the lack of a motive to fabricate.

***Id.*** (quoting ***Commonwealth v. Walter***, 93 A.3d 442, 451 (Pa. 2014)).

In the case at bar, the trial court addressed Appellant's claim of error and discussed the reliability of Child's statements as follows:

> In determining whether a child's statement is admissible under the [tender years exception], our Superior Court has stated that "indicia of reliability include: the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age and the lack of a motive to fabricate." ***Commonwealth v. Barnett***, 50

---

[2] Section 5985.1 was amended effective August 27, 2019. The amendments renumbered the subsections and clauses in Section 5985.1 and expanded the list of criminal offenses a child-witness could describe under this exception.

A.[3]d 176, 183-184 (Pa. Super. 2012) (internal quotation marks and citations omitted). Thus, assuming an examination of the proposed adult witnesses confirms the reliability of the minor's statements, they are admissible under the Tender Years hearsay exception.

Instantly, the Commonwealth gave notice of its intention to introduce hearsay statements of [Child], as required by § 5985.1. Having previously heard K.C.'s testimony at the taint hearing, the Court allowed K.C. to testify to what [Child] told her moments after the incident, when she questioned [Child] in the bedroom as outlined above. N.T., Apr. 6, 2017 at 43. The near contemporaneous recounting of the story to K.C. on December 15, 2018, the consistency of [Child's] story when speaking to [K.C.] again on December 19, 2015[6] and in the Mission Kids interview all demonstrate indicia of reliability. Furthermore, the Court found [Child] competent to testify[,] and [Child] ultimately testified at trial in a manner totally consistent with the statements K.C. indicated [Child] made and consistent with the Mission Kids interview. Therefore, the [c]ourt did not err in admitting [Child's] hearsay statements.

> [6] Testimony regarding K.C.'s second conversation with [Child] was elicited at the hearing on [Appellant's] Motion to Exclude based on Taint, but the jury did not hear testimony regarding this conversation. N.T. Apr. 6, 2017 at 66-69.

Trial Court Opinion, 11/14/18, at 11-12.

After review, we discern no abuse of discretion in the trial court allowing

K.C. to testify regarding statements made by Child.[3]  As discussed above, the

---

[3] The record reveals that Appellant's counsel objected to K.C. testifying about what Child said to K.C. following the assault in the basement.  N.T., 4/6/17, at 38.  Thus, Appellant's objection to that portion of K.C.'s testimony was preserved.  *See Commonwealth v. Guilford*, 861 A.2d 365, 370-372 (Pa. Super. 2004) (in order to preserve an issue for appellate review, a party must make a timely and specific objection at trial, otherwise the issue is waived). However, we agree with the trial court that any challenge Appellant had

trial court found that Child's statements were made close in time to the events at issue, Child recalled the events consistently, and Child's statements were not coached. Trial Court Opinion, 11/14/18, at 10. We agree with the trial court that there were sufficient *indicia* of reliability to permit K.C.'s testimony concerning Child's statements under the tender years exception to the rule against hearsay. Accordingly, Appellant's claim fails.

For the reasons set forth above, we conclude that Appellant is entitled to no relief. Therefore, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/17/19

___

regarding statements Child made during the interview at Mission Kids was waived. Trial Court Opinion, 11/14/18, at 10. Appellant's counsel did not object when the video of Ms. Crocetto interviewing Child at Mission Kids was played for the jury. N.T., 4/6/17, at 181.