J-A12012-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
LUKE WILLIAM HOOVER :
:
Appellant : No. 828 WDA 2021

Appeal from the Judgment of Sentence Entered July 12, 2021
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0000350-2018

BEFORE: MURRAY, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.: **FILED: May 13, 2022**

Luke William Hoover (Appellant) appeals from the judgment of sentence

entered in the Westmoreland County Court of Common Pleas, following his

jury convictions of attempted rape[1] and related offenses. He argues the trial

court erred in: (1) admitting evidence of his prior bad acts, under Pa.R.E.

404(b), to show intent to commit attempted rape; and (2) denying his motion

for judgment of acquittal for attempted rape. We affirm.

## I. Facts

The underlying facts are largely not disputed on appeal. The charges

against Appellant arose from an incident on September 4, 2017, at Winnie

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 901(a), 3121(a)(1) (rape by forcible compulsion).

Palmer Nature Reserve, which is a part of the Saint Vincent College campus in Latrobe, Westmoreland County. N.T. Trial, 4/13/21, at 51, 105-06.[2] The trial court summarized the trial testimony of M.B. (the Victim), a Saint Vincent College student, as follows:

> [The Victim] went on a hike through the . . . Nature Reserve[, which] was not crowded on that day[. T]he path . . . split into a ["Y"] and on the left side of the split, a taller man wearing an American flag t-shirt and a hat was facing the shrubs . . . . Victim took a right at the ["Y"] and continued along her path until making a left at the end of the trail. [N.T. Trial at 51-54.]
>
> Victim saw the [same man] walking towards her [and made] eye contact with [him. A]fter the man passed her, he took a few steps before coming back to her and putting her in a chokehold. [T]he man [stood] behind her with his forearm around her neck [and] his bicep on the side of her neck as he squeezed her neck. [I]t was difficult for [the Victim] to breathe . . . but she was able to ask him what he was doing. [N.T. Trial at 55-58.]
>
> Victim testified that the man attempted to pull her onto the ground by pulling with his right arm still around her neck and his left arm around her torso. Victim attempted to pull his forearm off her neck with her hands and elbowed him in the abdomen[. S]he fell to the ground as the man eventually released her. [The Victim] ran away while the man apologized and said he thought she was someone else. [N.T. Trial at 58-60.]

Trial Ct. Op., 8/31/21, at 2-3 (paragraph break added).

The Victim reported the incident to the college public safety office that same day, and the Pennsylvania State Police were contacted. Trial Ct. Op. at

---

[2] While the cover of the trial transcript identifies the dates of trial as both April 13 and 14, 2021, for ease of citation we cite only the April 13th date. Additionally, in block-quoting the trial court's opinion, below, we consolidate the court's citations to the transcript.

3.  Meanwhile, the Nature Preserve provided a photograph of the suspect — who was Appellant — and the Victim identified him as the person who attacked her. *Id.*

The State Police learned Appellant, then 20 years old, was a resident of Adelphoi Village, located approximately one mile from the Nature Reserve. Adelphoi Village was a group home for juvenile offenders with mental health and sexual offender issues, and all the residents, including Appellant, have been committed there by a court.[3] N.T. Trial at 108, 129-30. Appellant had received a weekend "home pass," permitting him to leave the facility with a guardian. Trial Ct. Op. at 4. Appellant's grandmother had taken him to the Nature Reserve that day, but she stayed in the car. N.T. Trial at 115.

On September 21, 2017, 17 days after the assault, Pennsylvania State Trooper John Zalich interviewed Appellant at the group home. *See* N.T. Trial at 111. The trooper testified at trial about the statements Appellant made:

> [Appellant] admitted he was walking down the same path as Victim[. W]hen their paths split and they eventually passed each other again, he wanted to talk to her so he grabbed her from behind around her neck. [Appellant] also told Zalich that he knew the path would eventually reconnect after a circle so he would pass Victim again after the first encounter. . . .

Trial Ct. Op. at 4. Trooper Zalich further testified:

---

[3] We note Appellant did not object to the introduction of this evidence — that he had been committed by a court to reside at a group home for juvenile sex offenders.

I asked [Appellant] if he had sexual tendencies during the interaction with the victim. At that point . . . there was a lull, like, he didn't answer me. So, I reworded it and . . . toned . . . down [the terminology] and . . . asked him if he was having any **urges** and he said he was. Then I followed up with [asking] him if he needed more **treatment** and he said he did. [A]t that time the interview concluded.

N.T. Trial at 115-16 (emphasis added). Trooper Zalich explained that the term "treatment" meant the sexual offender treatment offered at Adelphoi Village. *Id.* at 116.

## II. Procedural History

Appellant was charged with attempted rape, aggravated assault, strangulation, simple assault, and stalking.[4]

On February 5, 2021, the Commonwealth filed a motion *in limine*, seeking to introduce evidence of two "prior bad acts" under Pa.R.E. 404(b).[5] First, from 2013 to 2014, Appellant, then 16 years old, "was in a relationship with" a 12-year old girl, T.E., with whom he repeatedly had forcible sexual

_____

[4] 18 Pa.C.S. §§ 2702(a)(1), 2718(a)(1), 2701(a)(1), 2709.1(a)(1), respectively.

[5] On November 19, 2018, Appellant filed a motion to suppress the statements he made to Trooper Zalich, alleging a *Miranda* violation. *See Miranda v. Arizona*, 384 U.S. 436 (1966). The trial court conducted a hearing on December 20th and denied the motion on February 27, 2019.

We note the lapse of three years between the filing of the criminal complaint, on January 25, 2018, and the Commonwealth's motion *in limine* of February 5, 2021. The trial docket entries show numerous continuances, some related to the COVID-19 pandemic.

- 4 -

intercourse. *See* N.T. Trial at 124. Appellant initiated these "encounters by choking [the girl] with his hands around her throat and pulling her pants off." *Id.* For these acts, Appellant was placed at Adelphoi Village by the Somerset County juvenile court. *Id.* at 124-25. Second, in July of 2015, Appellant was at home and asked D.D., a 37-year old family acquaintance, to his room to speak "in private." *Id.* at 125. Once inside, Appellant grabbed D.D. "by the throat, pushed her down onto his bed, pinned her down, and unzipped her pants. As [Appellant] attempted to pull down [her] pants, D.D. was able to" escape.[6] *Id.* The Commonwealth sought to introduce both prior acts to establish Appellant's **intent** to commit attempted rape in the instant case, by showing a "common method of grabbing females by the throat in an effort to advance his plan to remove their clothes and have forcible intercourse[.]" Commonwealth's Motion *in Limine* at 3.

Appellant filed an objection to the Commonwealth's motion *in limine*. The trial court granted the Commonwealth's motion on March 25, 2021,[7]

---

[6] In its motion *in limine*, the Commonwealth stated Appellant was placed at Adelphoi Village due to the offenses committed against T.E., as well as "violations of the supervision conditions for the July 2015 assault" against D.D. Commonwealth's Motion *in Limine*, 2/5/21, at 3 (unpaginated).

[7] While the trial court scheduled a hearing for March 24, 2021, it is not apparent from the record whether the hearing was held. Neither the parties' briefs nor the trial court's opinion refer to a hearing. Upon informal inquiry by this Court, the trial court advised it did not have any transcript of a motion *in limine* hearing.

finding the probative value outweighed the potential for prejudice, and the court agreed to give a cautionary instruction to the jury.

The charges proceeded to a two-day jury trial commencing April 13, 2021. The Commonwealth presented the testimony of the Victim, Trooper Zalich, as well as the responding state trooper, and Appellant's supervisor at Adelphoi Village. Additionally, the parties stipulated that if T.E. and D.D. were called at trial, they would testify to the prior bad act incidents as described above. N.T. Trial at 124-25. Immediately thereafter, the trial court gave a cautionary instruction to the jury, that Appellant was not on trial for any past sexual misconduct. *Id.* at 126. Instead, the evidence was presented "for a limited purpose[,] of tending to show [Appellant's] intent" in this case, and the evidence must not be regarded as showing Appellant "is a person of bad character or criminal tendencies [sic]." *Id.* at 127.

Following the Commonwealth's case-in-chief, Appellant moved for a judgment of acquittal on all charges. N.T. Trial at 138. The trial court granted the motion as to stalking, but denied it as to the remaining charges. *Id.* at 149.

Appellant did not testify or present any evidence. N.T. Trial at 160. The jury found him guilty of attempted rape, aggravated assault, strangulation, and simple assault.

On July 12, 2021, the trial court imposed the following sentences: (1) five to 10 years' imprisonment on the attempted rape charge, to be served

consecutively to Appellant's Somerset County sentence; (2) a concurrent five to 10 years' imprisonment for aggravated assault; and (3) a concurrent two to four years' imprisonment for strangulation.[8] The aggregate sentence was thus five to 10 years. The trial court also noted Appellant's attempted rape conviction was a Tier III offense under the Sexual Offender Registration and Notification Act[9] (SORNA). N.T. Sentencing at 10.

Appellant took this timely appeal and complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

### III. Statement of Questions Involved

Appellant raises two issues for this Court's review.

I. Whether the trial court erred by ruling that the 404(b) evidence was admissible to prove intent on the date in question, where the facts of a prior conviction were not so similar as to be considered a signature?

II. Whether the trial court [committed] reversible error in denying Appellant's motion of judgment of acquittal as to count 1, attempted rape, in that there was no evidence of a substantial step toward committing a rape as required by 18 Pa.C.S. . . . § 901?

---

[8] The trial court's opinion mistakenly stated Appellant's sentence for strangulation was five to 10 years. *See* Trial Ct. Op. at 2.

[9] 42 Pa.C.S. §§ 9799.10 to 9799.41. *See* also 42 Pa.C.S. §§ 9799.14(d)(14) (attempt to commit rape is a Tier III offense), 9799.15(a)(3) (individual convicted of a Tier III sexual offense shall register for life).

At the sentencing hearing, the Commonwealth indicated the Sexual Offender Assessment Board found Appellant did **not** meet the criteria for a sexually violent predator. N.T. Sentencing, 7/12/21, at 3. *See* 42 Pa.C.S. § 9799.24 (sexually violent predator assessments).

Appellant's Brief at 7.

## IV. Admission of Prior Bad Acts

Appellant first challenges the trial court's admission of the prior bad acts evidence under Pa.R.E. 404(b). "The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion." *Commonwealth v. Gilliam*, 249 A.3d 257, 270-71 (Pa. Super. 2021) (citation omitted). "Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Golphin*, 161 A.3d 1009, 1021 (Pa. Super. 2017) (citation omitted).

This Court has explained:

Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, **intent**, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). . . .

*Gilliam*, 249 A.3d at 271-72. "This list is non-exclusive." *Commonwealth v. Brown*, 52 A.3d 320, 325 (Pa. Super. 2012).

In addition, "[o]ur Supreme Court has consistently recognized that admission of distinct crimes may be proper where it is part of the history or

natural development of the case, *i.e.*, the *res gestae* exception." ***Brown***, 52

A.3d at 326.

> [T]he "res gestae" exception . . . is also known as the "complete story" rationale, *i.e.*, evidence of other criminal acts is admissible "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place."

***Id.*** (citations omitted).

> We have stated:
>
> To establish one of the exceptions set forth in Rule 404(b)(2), there must be "a close factual nexus sufficient to demonstrate the connective relevance of the prior bad acts to the crime in question[.]" Additionally, the term "unfair prejudice" in Rule 404(b)(2) "means a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." "[W]hen weighing the potential for prejudice, a trial court may consider how a cautionary jury instruction might ameliorate the prejudicial effect of the proffered evidence."
>
> \* \* \*
>
> > [T]he trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact. To do so, the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

***Gilliam***, 249 A.3d at 271-72 (emphasis added and citations omitted).

> [T]he [trial] court is not . . . required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged.

- 9 -

*Commonwealth v. Dillon*, 863 A.2d 597, 601 (Pa. Super. 2004) (citation omitted).

Here, Appellant argues the trial court erred in admitting the prior bad acts evidence, because any similarities with the present charges "were too remote . . . to develop the necessary logical connection." Appellant's Brief at 15. In support, he points out differences between the prior incidents and the instant offenses: (1) while he knew the individuals in both prior incidents, the Victim in this case "was a complete stranger[;]" (2) there was no commonality in the victims' ages, where T.E. was 12 years old, D.D. was 37, and the Victim was approximately 18; (3) the incidents occurred in dissimilar locations or environments; (4) while "it could be easily inferred . . . that Appellant used a face-to-face front choke" on the prior two victims, here, the Victim testified that he stood behind her; and (5) while Appellant attempted to remove the pants of the prior two victims, here, there was no testimony he attempted to disrobe the Victim. *Id.* at 16-18. Appellant thus concludes there was insufficient evidence to show "the acts were so nearly identical as to form a signature." *Id.* at 19. Finally, Appellant alleges the probative value of the evidence did not outweigh the potential for prejudice. *Id.* at 15.

The Commonwealth states that while there is scarce case authority on the admission of prior bad acts to show solely **intent**, decisional law "often covers common scheme evidence in conjunction with intent and/or identity." Commonwealth's Brief at 6. Here, the identity of the assailant was not at

issue, and thus Appellant's argument — highlighting the differences between the two prior bad acts and the present offense — is misplaced. *Id.* at 7-8. The Commonwealth concedes that even with Appellant's statement that "he was having sexual 'urges,'" it was "nearly impossible to prove [he] intended to commit a forcible rape[.]" Commonwealth's Brief at 4-5; *see* N.T. Trial at 116. The Commonwealth thus asserts the prior acts evidence in this case was needed, where it was the Victim's ability to escape that "prevent[ed] any further acts [by Appellant] to demonstrate his intent." Commonwealth's Brief at 5, 12. The Commonwealth maintains that with all three victims, Appellant applied pressure to their throats and pulled them to the ground as a precursor to an alleged sexual assault. *Id.* at 10. Finally, the Commonwealth notes the trial court gave a cautionary instruction, and denies the prior bad acts evidence increased the risk of undue prejudice to Appellant.[10] *Id.* at 5-6, 11.

Consistent with the Commonwealth's discussion, we have not discovered any case authority involving the admission of prior bad acts evidence to show **intent only**. Instead, several decisions address evidence presented to show intent along with motive, a common scheme, plan, and/or identity. *See Gilliam*, 249 A.3d at 262-63, 273 (evidence — that defendant,

---

[10] The Commonwealth maintains that, "in order to present these facts in as non-prejudicial manner as possible," it stipulated to the anticipated testimony by T.E. and D.D. Commonwealth's Brief at 11. However, it does not cite to the place in the trial record that supports such an articulated intent. *See id.*

a masseuse, was initially "appropriate and professional" and gained prior clients' trust, but subsequently "deviated from [his] usual professional massages and worked his way further up the [prior clients'] leg[s] until he touched their vaginas" — was admissible to show a common plan and/or lack of mistake with regard to present charges that defendant committed same behavior with victims); *Golphin*, 161 A.3d at 1016, 1021-22 (evidence of defendant's past physical abuse of his paramour and her young children was admissible to show, *inter alia*, a common scheme or plan with respect to instant charges of aggravated assault and third-degree murder of one of the children).

We emphasize that our standard of review of an evidentiary ruling is an abuse of discretion. *See Gilliam*, 249 A.3d at 270-71. Here, the trial court considered both parties' arguments and concluded that despite the differences between the three incidents, Appellant's "act of placing his hands around a victim's neck was a "**signature**" action, which "establish[ed] a logical connection between the prior acts and the incident in this case." *See* Trial Ct. Op. at 7 (emphasis added). The court further reasoned:

> Additionally, in [the prior incident with D.D., Appellant] waited until the victim was in an area away from other people by asking her to his bedroom but still attempted an assault with other people in the house. . . .
>
> In the present case, [Appellant] waited until Victim was in an area away from other people and placed his arm around her throat to gain control of her. N.T. [Trial] at 52, 56. Similarly to the assault of [D.D., Appellant] did not take Victim to a completely secluded area as his grandmother was waiting for him in the car

and the Nature Reserve is a public park. In fact, Victim was able to find a couple to direct her out of the Nature Reserve a short distance away from where the assault took place. [*Id.*] at 62. . . .

Trial Ct. Op. at 6-7. Appellant does not challenge this latter analysis. Appellant likewise does not address the Commonwealth's point that any further conduct against the Victim — that is, any additional step toward committing rape — was thwarted only by the Victim's ability to escape.

Additionally, we note the prior bad acts evidence provided explanation to Appellant's statement, in his police interview, that he had "urges" and "needed more treatment." *See* N.T. Trial at 115. The prior acts committed against T.E. and D.D. led to Appellant's placement, through the justice system, in a group home for juvenile sexual offenders. *Id.* at 108, 129-30. Without this prior acts evidence, the terms — "urges" and "treatment" — would have lacked proper context. *See id.* Thus, we would further conclude the introduction of the evidence was consistent with the *res gestae* exception, as it was a part of the history or natural development of the case. *See Brown*, 52 A.3d at 326.

Finally, we consider that the trial court properly gave a cautionary instruction to the jury, immediately after the introduction of the evidence. *See Gilliam*, 249 A.3d at 272. The court instructed the jury that Appellant was not on trial for the past sexual misconduct, and instead, the evidence was presented only to show his intent in this case, and could not be considered to

show he was a person of bad character or had criminal tendencies. **See** N.T. Trial at 126-27.

After review of the trial court's opinion, the parties' arguments, the trial record, and the relevant authority set forth above, we find no abuse of discretion, nor partiality, prejudice, bias, or ill will in the court's evidentiary ruling. **See Gilliam**, 249 A.3d at 271; **Golphin**, 161 A.3d at 1021. The court reasonably concluded that "the details and surrounding circumstances of each criminal incident [showed] criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator." **See Gilliam**, 249 A.3d at 272. Thus, we do not disturb the court's admission of the Rule 404(b) evidence.

## V. Sufficiency of Evidence for Attempted Rape

Next, Appellant argues the trial court erred in denying his motion for judgment of acquittal as to the attempt rape charge. We note the relevant standard of review:

> A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge.
>
> > The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. [W]e may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of

- 14 -

> innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. . . . Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Andrulewicz*, 911 A.2d 162, 165 (Pa. Super. 2006) (citations omitted).

The Pennsylvania Crimes Code defines the offense of attempt as follows: "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). "The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not . . . focus on the acts remaining to be done before the actual commission of the crime." *Commonwealth v. Zingarelli*, 839 A.2d 1064, 1069 (Pa. Super. 2003) (citation omitted). Finally, we note the Crimes Code's definition of rape by forcible compulsion: "A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant . . . [b]y forcible compulsion." 18 Pa.C.S. § 3121(a)(1).

At this juncture, we set forth the trial court's reasoning in denying Appellant's motion for judgment of acquittal. The court noted that "[a]n array of acts has been found to be a substantial step for attempted rape, including incidents where no sexual act had been specifically attempted and . . . no

- 15 -

clothing was removed." Trial Ct. Op. at 8. In support, the court cited the following decisional authority: (1) ***Commonwealth v. Simpson***, 462 A.2d 821, 824 (Pa. Super. 1983) (defendant's applying pressure to victim's throat and starting to take off his own pants constituted a substantial step toward commission of rape); (2) ***Commonwealth v. Martin***, 452 A.2d 1066, 1070 (Pa. Super. 1982) (grabbing victim, threatening her, and expressing intent to have sex with her "clearly amount[ed] to a substantial step in effectuating an intended rape"); (3) ***Commonwealth v. Keeler***, 448 A.2d 1064, 1072 (Pa. Super. 1982) (telling victim, "I'm going to rape you," pushing victim to ground, and punching and kicking her was sufficient to sustain attempted rape conviction); and (4) ***Commonwealth v. Bullock***, 393 A.2d 921, 923 (Pa. Super. 1978) (*en banc*) (ripping victim's shirt, "pulling down her bra, and attempting to remove her pants" supported a finding that defendant took a substantial step toward rape).

On appeal, Appellant argues that in each of the cases relied upon by the trial court, there existed "some act that can be tangentially related to a sex offense[:]" "a threat of rape, the removal or attempt to remove clothing, or the touching of the sexual parts of the victim's body." Appellant's Brief at 20, 21. Appellant construes these same cases to stand for the proposition "that the lack of a sexual element to [an] assault . . . is insufficient for [an] attempted rape" charge. ***Id.*** at 22-23. Here, he asserts, there was no evidence of any "sexual element" related to the assault. ***Id.*** at 23.

Nevertheless, we note Appellant also concedes the Commonwealth presented the prior bad acts evidence — although he continues to argue it was "improperly admitted" — as well as Trooper Zalich's testimony that Appellant told him he "was having 'urges.'" *Id.* at 21. We conclude no relief is due.

Appellant cogently points out that the cases cited by the trial court involved some additional act that is not present here — for example, the removal of clothing, statements of a sexual nature. However, as Appellant discreetly acknowledges, this case involves the prior bad acts evidence, which the Commonwealth introduced in order to establish his intent with respect to the attempted rape charge. We have concluded above that this evidence was properly admitted. The trial court reasoned,

> In the present case the [Rule] 404(b) evidence introduced to prove intent demonstrates that the act of waiting until Victim was in a secluded area and placing her in a chokehold while bringing her to the ground is a signature of how [Appellant] has committed prior sexual assaults. . . .

Trial Ct. Op. at 8. We also consider the testimony of Trooper Zalich, that Appellant responded in the affirmative when asked if "was having any urges" during the attack of the Victim, and whether Appellant "needed more treatment." *See* N.T. Trial at 115-16. The trial court aptly observes: "Although there may be more steps necessary to complete a rape, the proper evaluation of whether a substantial step has occurred examines the steps already taken by the [d]efendant." Trial Ct. Op. at 8.

We thus agree with the trial court that after "viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner," the jury could find every element of attempted rape, including "a substantial step," beyond a reasonable doubt. *See Andrulewicz*, 911 A.2d at 165.

## VI. Conclusion

Having concluded that no relief is due on Appellant's issues, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/13/2022