J-S03022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| STEVEN BURTON | : | |
| | : | |
| Appellant | : | No. 263 EDA 2022 |

Appeal from the PCRA Order Entered November 22, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007764-2015

BEFORE: BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY McCAFFERY, J.: **FILED JUNE 21, 2023**

Steven Burton (Appellant) appeals *nunc pro tunc* from the November 22, 2019, order entered in the Philadelphia County Court of Common Pleas, denying without a hearing his first Post Conviction Relief Act[1] (PCRA) petition. Appellant seeks relief from the judgment of sentence of 10 to 20 years' imprisonment, imposed following his jury convictions of aggravated assault[2] and firearms offenses. His attorney, James Lloyd, Esquire (Counsel), has filed a brief and petition to withdraw from representation, purportedly pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v.***

_____

[1] 42 Pa.C.S. §§ 9541-9545.

[2] 18 Pa.C.S. § 2702(a)(1).

*Santiago*, 978 A.2d 349 (Pa. 2009).[3]  Counsel presents issues of: (1) sentencing merger, for aggravated assault and carrying a firearm without a license;[4] (2) trial counsel's ineffectiveness for not filing a post-sentence motion to challenge the discretionary aspects of his sentence; and (3) trial counsel's ineffectiveness for not objecting to a jury instruction on the witnesses' identification of Appellant.  We conclude no relief is due, grant Counsel's petition to withdraw, and affirm the PCRA dismissal order.

## I.  Trial & Sentencing

Appellant was charged with the attempted murder[5] of Donovan Love (the Victim), aggravated assault, and several firearms offenses.  This matter proceeded to a jury trial on January 5, 2016.  In an opinion previously prepared for direct appeal, the trial court summarized the trial evidence as follows.  *See* Trial Ct. Op., 9/5/18, at 2-6.  The Victim and his wife, Elaine Boone (Wife) lived with Wife's cousin, Ayonna, as well as Ayonna's children.[6]

_____

[3] As we discuss *infra*, the proper framework for counsel to withdraw in a PCRA proceeding and appeal is set forth by *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[4] 18 Pa.C.S. § 6106(a)(1).

[5] 18 Pa.C.S. §§ 901(a), 2502.

[6] Although the trial court opinion stated Ayonna was Wife's daughter, Wife stated at trial that they were cousins.  *See* Trial Ct. Op. at 3; N.T. Trial Vol. 2, 1/6/16, at 100-01.

Appellant was the father of two of these children and frequently visited the home.

On April 7, 2015, the date of the underlying shooting, Wife told a detective the following. That morning, she and the Victim had an argument on the ground floor of their home. Appellant, who was present, intervened but the Victim told him to "mind his business." Trial Ct. Op. at 3. Appellant went upstairs while the Victim left. Appellant returned downstairs, pointed a gun at Wife's face, and said, "Where is your fucking dude at?" *Id.* Wife ran outside and called the Victim, explaining what just occurred and telling him not to return. Wife ran to meet him, but the Victim was running back toward the house. *Id.* "Shortly thereafter, [Wife] heard a gunshot and . . . ran back . . . home, where she discovered [the Victim] laying on the sidewalk[,] bleeding." *Id.* The Victim was shot five times — in both thighs and in his arm. *Id.* at 2. Wife was shown a photo array and identified Appellant.

On direct examination at trial, however, Wife testified she did not recall: "providing the majority of her statement" to the detective; stating that Appellant pointed a gun at her; nor identifying Appellant in a photo array. Trial Ct. Op. at 4. Wife also did not recognize Appellant in the courtroom. She stated "she was afraid to testify '[b]ecause of . . . several threats' she received . . . about 'what happened to [her] husband.'" *Id.* Wife's prior statement, made to the detective, was read into the record. *Id.* at 3.

Meanwhile, the Victim gave a statement to a detective the day after the shooting. He stated the shooter was "Steve" (Appellant's name) and "Ayonna's baby father." Trial Ct. Op. at 4. The Victim also identified Appellant in a photo array, although he "refused to sign below Appellant's photo." *Id.* at 5. At trial, however, the Victim testified he had no recollection of being shown a photo array nor of identifying Appellant as the shooter. He also stated "he did not want to testify but had to come to the trial only because he 'got shot' and was persuaded by the Commonwealth to appear." *Id.*

Finally, Philadelphia Police Officer Emmanuel Folly testified at trial to the following. He was off-duty, on the same block as the shooting, when he was woken by the sound of a gunshot. The officer looked out a second-floor window and saw Appellant "chasing another black male down the street," pointing his gun at the Victim, and firing multiple times. Trial Ct. Op. at 5. The officer called 911, and later identified Appellant in a photo array. Officer Folly also identified Appellant at trial. N.T., 1/6/16, at 49.

Appellant did not testify, but presented a witness, Tanja Carter, who owned or rented the home, but denied that the Victim or Wife lived there. *See* N.T. Trial Vol. 3, 1/7/16, at 30, 51; Trial Ct. Op. at 3. Carter stated Appellant was at the house "early in the morning" and left. Trial Ct. Op. at 6. **Subsequently**, the Victim and Wife had an argument and the Victim physically attacked Wife. *Id.* at 6. The Victim left, but Wife called him "and

told him that Appellant 'put a gun in her face,' and a 'little while after[,'] Carter heard gunshots outside[.]" **Id.**

The jury found Appellant not guilty of attempted murder, but guilty of aggravated assault, firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, and possessing instruments of crime (PIC).[7]

On March 14, 2016, the trial court imposed the following sentences: (1) eight to 16 years' imprisonment for aggravated assault; (2) a consecutive two to four years for firearms not to be carried without a license; and (3) no further penalty for PIC and carrying firearms in public in Philadelphia. The aggregate sentence was thus 10 to 20 years.

Appellant did not file a post-sentence motion, but filed a timely, counseled notice of appeal. On June 10, 2016, however, this Court dismissed the appeal, docketed in this Court at 1141 EDA 2016, for trial counsel's failure to file a docketing statement.[8]

_____

[7] 18 Pa.C.S. §§ 6108, 907(a), respectively.

The trial court separately found Appellant guilty of a bifurcated charge of persons not to possess firearms, 18 Pa.C.S. § 6105. N.T. Trial Vol 4, 1/8/16, at 11. However, at the sentencing hearing, the Commonwealth moved to *nol pros* that charge, as Appellant in fact "didn't qualify . . . for" it. **See** N.T. Sentencing, 3/14/16, at 3-4.

[8] Appellant was represented at trial, sentencing, and this appeal by Richard Bobbe, III, Esquire.

On May 31, 2017, Appellant filed a timely *pro se* PCRA petition,[9] and John Cotter, Esquire, was appointed to represent him. Attorney Cotter filed an amended PCRA petition, seeking leave to file *nunc pro tunc* both a post-sentence motion and direct appeal. The trial court granted relief as to a direct appeal, but denied leave to file a post-sentence motion. Appellant thus filed a counseled notice of appeal, as well as a counseled appellate brief at this Court's Docket 3831 EDA 2017. On April 8, 2019, however, Appellant withdrew the appeal, without providing a reason.

## II. PCRA Petition

Three days later, on April 11, 2019, Appellant filed the underlying, timely PCRA petition, *pro se*.[10] He raised two claims — first, that the trial

---

[9] At this point in the proceedings, Appellant's judgment of sentence became final, for PCRA purposes, at the expiration of the 30-day period for filing a petition for allowance of appeal with our Supreme Court — Monday, July 11, 2016. **See** 1 Pa.C.S. § 1908; 42 Pa.C.S. § 9545(b)(3); Pa.R.A.P. 1113(a). Appellant then generally had one year, or until July 11, 2017, to file a PCRA petition. 42 Pa.C.S. § 9545(b)(1).

[10] Because Appellant's prior PCRA petition resulted in the reinstatement of his direct appeal rights, we consider the April 11, 2019, petition to be his first PCRA petition for timeliness purposes. **See Commonwealth v. Turner**, 73 A.3d 1283, 1286 (Pa. Super. 2013).

Furthermore, we note the petition was timely filed. Appellant's judgment of sentence became final when he voluntarily discontinued his direct appeal on April 8, 2019. **See Commonwealth v. McKeever**, 947 A.2d 782, 785 (Pa. Super. 2008). The filing of the petition, three days later, satisfied the general one-year filing deadline of the PCRA. **See** 42 Pa.C.S. § 9545(b)(1).

- 6 -

court's jury instruction, regarding the witnesses' identification of Appellant, "improperly vouched for" those witnesses' credibility. Appellant's Petition for Post Conviction Relief, 4/11/19, at 4. Second, Appellant asserted trial counsel was ineffective for not objecting to this jury instruction.

The PCRA court appointed Judge Hall, Esquire, to represent Appellant, and he subsequently filed a ***Turner***/***Finley*** letter, averring there were no issues of arguable merit. The PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss the PCRA petition without a hearing. Nevertheless, it conducted a brief hearing on November 22, 2019, where it orally granted Attorney Hall's request to withdraw and dismissed Appellant's PCRA petition. A written order, which set forth only the dismissal of the petition, was issued the same day. Following the reinstatement of Appellant's right to appeal from this dismissal order, Appellant filed the instant appeal by present appointed counsel, Attorney Lloyd.

### III. Reinstatement of PCRA Appeal Rights

Although the convoluted, intervening procedural history does not affect our review of the issues raised on appeal, we briefly review it, as it includes two appeals to this Court and a second PCRA petition.

First, we note that while the PCRA court orally granted leave for Attorney Hall to withdraw, it did not issue a written order, and thus the attorney remained counsel of record. Meanwhile, the written order dismissing the PCRA petition did not advise Appellant of his appeal rights, nor indicate that service

was made on him. On February 5, 2020, Appellant filed a *pro se* notice of appeal. On June 4, 2020, this Court *sua sponte* quashed the appeal, docketed at 701 EDA 2020, as untimely filed.

Next, Appellant filed, on November 4, 2020, a *pro se*, 13-page "notice of appeal," which raised multiple claims of PCRA court error. On January 12, 2021, Attorney Hall filed a motion to withdraw, which the PCRA court formally granted one day later. Present counsel, Attorney Lloyd, was appointed, and on July 15, 2021, he filed a praecipe to discontinue the appeal that was pending in this Court at 53 EDA 2021.

On August 18, 2021, Attorney Lloyd then filed a petition to reinstate *nunc pro tunc* Appellant's right to appeal from the November 22, 2019, PCRA dismissal order. We construe this filing to be a second PCRA petition, which must comply with the PCRA's timeliness requirements. **See Commonwealth v. Fairiror**, 809 A.2d 396-98 (Pa. Super. 2002) (a petition for reinstatement of PCRA appellate rights *nunc pro tunc* must be considered a second PCRA petition, and PCRA court has no jurisdiction to hear an untimely petition). The petition invoked the governmental interference timeliness exception, and argued that neither the PCRA court nor Attorney Hall properly advised Appellant of his appeal rights. Appellant's Petition Under Post Conviction Relief Act, 8/18/21, at ¶¶ 26-27, 46, 48; **see also** 42 Pa.C.S. § 9545(b)(1)(i); **Commonwealth v. Smith**, 181 A.3d 1168, 1173 n.2 (Pa. Super. 2018) (finding no error in PCRA court's granting relief on a claim that clerk of court's

- 8 -

failure to serve a PCRA dismissal order on defendant and his attorney was governmental interference). Appellant further averred he first learned of the court's and counsel's failings on June 4, 2020, when the Superior Court quashed his first appeal, but he could not file a PCRA petition until his second appeal was discontinued. *See Commonwealth v. Montgomery*, 181 A.3d 359, 364 (Pa. Super. 2018) (*en banc*) (subsequent PCRA petition may not be considered while appeal from prior PCRA order is pending).

The Commonwealth did not oppose the petition. *See* Commonwealth's Letter, 1/21/22, at 1, 4-5 (unpaginated). On April 4, 2022, the PCRA court reinstated Appellant's right to appeal *nunc pro tunc* from the PCRA dismissal order. Following the new notice of appeal, the court directed Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. In response, however, Counsel filed a notice of intent to file an "*Anders*/*McClendon* Brief." The PCRA court did not file an opinion; however, as noted above, it had previously filed an opinion on September 5, 2018, in preparation for Appellant's direct appeal.

### IV. *Anders* Brief & Petition to Withdraw

As stated above, Counsel has filed an *Anders*/*McClendon* brief with this Court. We remind Counsel that *Turner*/*Finley* is the proper framework for withdrawing from PCRA representation, which — while a "close

cousin[ ]" — is distinct from **Anders**.[11] **See Commonwealth v. Wrecks**, 931 A.2d 717, 721-22 (Pa. Super. 2007). Nevertheless, "because an **Anders** brief provides greater protection to the defendant, we may accept an **Anders** brief in lieu of a **Turner**/**Finley** letter." **Commonwealth v. Fusselman**, 866 A.2d 1109, 1111 n.3 (Pa. Super. 2004). **See also Wrecks**, 931 A.2d at 721-22 (explaining similarities and differences between **Anders** and **Turner**/ **Finley** requirements). For ease of review, we cite Counsel's brief with the title that appear on its face and on our docket — "**Anders** Brief."

This Court has explained:

Counsel petitioning to withdraw from PCRA representation must proceed . . . under [**Turner** and **Finley** and] . . . review the case zealously. [C]ounsel must then submit a "no-merit" . . . brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

Counsel must also send to the petitioner: (1) a copy of the "no merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.

**Commonwealth v. Doty**, 48 A.3d 451, 454 (Pa. Super. 2012) (citation omitted). If we determine counsel has satisfied these technical requirements, this Court "must then conduct [our] own review of the merits of the case. If

---

[11] Counsel also incorrectly refers to this appeal as "a direct appeal." **See Anders** Brief at 14. A direct appeal lies from the judgment of sentence. **Commonwealth v. Patterson**, 940 A.2d 493, 497 (Pa. Super. 2007).

[we] agree[ ] with counsel that the claims are without merit, [we] will permit counsel to withdraw and deny relief." ***Id.*** (citation omitted).

Here, Counsel has filed a petition to withdraw, which states he has: "independently and conscientiously reviewed the record . . . with an eye to uncovering appealable error[;]" communicated with Appellant about this appeal; conducted legal research; and concluded that "all possible issues to be raised [are] frivolous." Counsel's Petition to Withdraw, 10/9/22, at 2 (unpaginated). Counsel further avers he sent a copy of the ***Anders*** brief and petition to withdraw to Appellant, and attaches a copy of a letter he sent to Appellant, which advises him of his right to retain new counsel or proceed *pro se* to raise any additional points.

In light of the foregoing, we determine Counsel has complied with the technical requirements of ***Turner*** and ***Finley***, and thus we conduct our own review of the merits of the issues raised. ***See Doty***, 48 A.3d at 454. In addition to the jury instruction issue raised in Appellant's *pro se* PCRA petition, Counsel addresses two claims Appellant has raised in their communications: the legality of the consecutive sentences and trial counsel's alleged ineffectiveness for not filing a post-sentence motion to challenge the discretionary aspects of his sentence. ***Anders*** Brief at 34.

## V. Sentencing Merger

First, Counsel explains that Appellant wishes to present a claim that "illegal consecutive sentences were imposed upon him." ***Anders*** Brief at 38.

- 11 -

Here, Appellant received sentences of eight to 16 years' imprisonment of aggravated assault and two to four years for carrying a firearm without a license, to be served consecutively. Counsel correctly points out a trial court has discretion to impose sentences concurrently or consecutively. *See id.*, *citing **Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa. Super. 2013). Counsel then states that **if** two sentences merge, a court would be precluded from imposing consecutive sentences. ***Anders*** Brief at 38. Counsel concludes, however, the two offenses above do not merge because each includes a statutory element not present in the other. ***Id.*** at 39. We agree.

"A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law. Accordingly, our standard of review is plenary." ***Commonwealth v. Golphin***, 161 A.3d 1009, 1028 (Pa. Super. 2017) (citation omitted). Our merger statute, 42 Pa.C.S. § 9765, "prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." ***Golphin***, 161 A.3d at 1029 (citation omitted).

Appellant was found guilty of aggravated assault under Subsection 2702(a)(1), which is defined as attempting to cause or intentionally, knowingly or recklessly causing bodily injury to another." ***See*** 18 Pa.C.S. § 2702(a)(1). Carrying a firearm is defined, in pertinent part, as carrying "a firearm concealed on or about [one's] person, except in his place of abode or

fixed place of business, without a valid and lawfully issued license[.]" 18 Pa.C.S. § 6106(a)(1).

We conclude that no element of either offense appears in the other. **See Golphin**, 161 A.3d at 1029. The offense of aggravated assault does not contemplate carrying a firearm nor possessing a valid firearm license. Meanwhile, carrying a firearm without a license does not require any causing, or attempting to cause, serious bodily injury to another. Accordingly, we agree with Counsel that the imposition of separate or consecutive sentences on these two counts was legal. **See Anders** Brief at 38-39. Our independent review of the record reveals no other potential, meritorious challenge to the legality of Appellant's sentence.

**VI. Trial Counsel's Ineffectiveness for not**

**Challenging Discretionary Aspects of Sentence**

Next, Counsel raises the issue of whether trial counsel was ineffective for not filing a post-sentence motion and challenging the discretionary aspects of sentencing. **Anders** Brief at 47. Counsel explained Appellant raised a discretionary aspect of sentencing challenge in his direct appeal in 2018, which he subsequently discontinued. Meanwhile, the trial court's opinion quotes Appellant's then-Rule 1925(b) statement as arguing the trial court: (1) sentenced him "outside the sentencing guidelines[;]" (2) "did not take into consideration [his] age, family history, medical condition and rehabilitative needs[;]" (3) "only considered [his] criminal history in imposing

punishment[;]" and (4) imposed an excessive sentence "under the circumstances of the case." Trial Ct. Op. at 7.

In the **Anders** brief, Counsel points out the trial court considered the presentence investigation report (PSI), as well as Appellant's juvenile and adult criminal history, prior violations "of his multiple probations/paroles," "persistent refusal to rehabilitate," substance abuse, "dishonesty to the presentence investigator," employment and education history, family circumstances, and "abhorrent crimes in this case." **Anders** Brief at 49, *quoting* Trial Ct. Op. at 12. Counsel emphasizes that sentencing is vested in the sound discretion of the trial court, and contends that had trial counsel filed a sentence motion, the court would have denied relief. **Anders** Brief at 50-51, *citing*, *inter alia*, **Commonwealth v. Antidormi**, 84 A.3d 736, 760 (Pa. Super. 2014) (standard of review for discretionary aspects of sentencing). Counsel thus concludes that any filing "of a timely motion for reconsideration of sentence would not have resulted in a different outcome." **Anders** Brief at 51. We agree that no relief is due on this ineffectiveness claim.

This Court has explained:

To prevail on an ineffectiveness claim, the petitioner has the burden to prove that (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance. The failure to satisfy any one of the prongs will cause the entire claim to fail.

*Smith*, 181 A.3d at 1174-75 (citation omitted). "[C]ounsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." *Id.* at 1174 (citation omitted).

With respect to sentencing, we note: "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Antidormi*, 84 A.3d at 760 (citation omitted). "The sentencing guidelines are not mandatory, and sentencing courts retain 'broad discretion in sentencing matters, and therefore, may sentence defendants outside the [g]uidelines.'" *Id.* (citation omitted). Furthermore:

> "[w]hen imposing sentence, a court is required to consider 'the particular circumstances of the offense and the character of the defendant.'" "In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation." "Where pre-sentence reports exist, we shall . . . presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. . . .

*Id.* at 761 (citations omitted).

In addition to Counsel's above discussion, we consider this portion of the trial court's opinion:

> [T]he sentencing guidelines recommended a term of [66] to [84] months' incarceration (+/- 12 months) on Appellant's conviction for aggravated assault. This Court sentenced Appellant to 8 to 16 years' incarceration on this charge, which is within the aggravated guideline range.

This Court further sentenced Appellant to 2 to 4 years' incarceration on his conviction of carrying a firearm without a license. This Court imposed no sentences on Appellant's remaining convictions for carrying an unlicensed firearm on the public streets of Philadelphia and [PIC].

*See* Trial Ct. Op. at 12 (paragraph break added). The court further opined:

With an already extensive criminal history that included [12] arrests, five convictions, and four commitments, [in this case] Appellant pulled the trigger multiple times at close range and shot [the Victim] **5 times**. This Court can attest that absent some compelling fact or circumstance that was unknown to the Court at the time of sentencing, there was zero chance that Appellant would have prevailed in any post-sentence motion requesting a sentence more lenient than 10 to 20 years' incarceration. . . .

*Id.* at 9 (emphasis in original).

In light of the trial court's reasoning, which is supported by the record, Appellant could not show the trial court abused its discretion in imposing sentence. *See Antidormi*, 84 A.3d at 760. Accordingly, he cannot establish, in his ineffectiveness claim, that his underlying challenge to the discretionary aspects of his sentence, has arguable merit. *See Smith*, 181 A.3d at 1174-75. Accordingly, we agree with Counsel that this issue has no merit. *See Doty*, 48 A.3d at 454.

### VII. Ineffective Assistance of Trial Counsel for not Challenging Jury Instruction on Witnesses' Identification

The final issue raised in the *Anders* brief is whether trial counsel was ineffective for not objecting to the trial court's jury instruction regarding witness identification. At this juncture, we note the relevant standard of review for the underlying claim:

[W]hen evaluating the propriety of jury instructions, [an appellate court] will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. A trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Antidormi*, 84 A.3d at 754 (citation omitted).

The jury instruction at issue concerned the Victim's, Wife's, and Officer Folly's identification of Appellant. The court stated:

. . . In their testimony, [the Victim, Wife, and Officer Folly] identified [Appellant] as the person who committed the crime here. In evaluating their testimony, in addition to all the other instructions that I'm providing to you about judging the testimony of witnesses, in considering identification testimony, there are additional factors that you should consider when you decide whether or not to believe the identification testimony that they gave in regard to [Appellant]:

No. 1, did the witness have a good opportunity to observe the perpetrator of this offense? No. 2, was there sufficient lighting for the witness to make their observations? No. 3, was the witness close enough to the individual to note facial and other physical characteristics, as well as any clothing the person was wearing? No. 4, has that witness ever made a prior identification of [Appellant] as the perpetrator of this crime at any other proceeding? No. 5, was the witness' identification positive or was it qualified by any inconsistency? And finally No. 6, during the course of this case, did the witness ever identify anybody else as being the perpetrator of this crime?

In considering whether or not to accept the testimony of [the Victim, Wife,] or Officer Folly, you should consider all of the circumstances under which those identifications were made. Furthermore, you should consider all of the evidence relative to the question of who committed this crime, including the testimony of any witness from which identity or non[-]identity of the perpetrator of this crime may be inferred.

- 17 -

You cannot find [Appellant] guilty unless you are satisfied beyond a reasonable doubt by all of the evidence, direct and circumstantial, not only that the crime was committed, but that it was [Appellant] who committed it.

N.T., 1/7/16, at 113-14 (paragraph breaks added).

In his *pro se* PCRA petition, Appellant asserted this instruction was an improper "presumption of truthfulness instruction" pursuant to ***Turner v. United States***, 396 U.S. 398 (1970), and the instruction "improperly vouched for" the witnesses. Appellant's Petition for Post Conviction Relief, 4/11/19, at 4, 5. Appellant contended the court "directed the jury to find that the prosecution's witnesses had identified [him] as the person who committed the crime, unless the presumption of truthfulness [was] overcome by" the six factors set forth in the instruction. ***Id.*** at 5. In other words, Appellant reasoned, "the court's instruction clearly required the jury to believe a witness' testimony until his or her untruthfulness [was] demonstrated by evidence making it appear as likely as not that the testimony was false." ***Id.*** at 6.

In the ***Anders*** brief, Counsel states the jury instruction utilized the language of then-Pennsylvania Suggested Standard Criminal Jury Instruction 4.07A ("Identification Testimony"). ***See Anders*** Brief at 46. Counsel denies the instruction directed the jury to "presume that the identifications were accurate," and contends the instruction included "a complete and accurate statement of the applicable legal principles." ***Id.*** at 46, 47. Again, we agree that no relief is due.

- 18 -

First, Appellant misconstrues the United States Supreme Court's 1970 decision in *Turner*. In *Turner*, the defendant was charged under federal drug trafficking laws of, *inter alia*, receiving, concealing or transporting heroin or cocaine that he knew was illegally imported. *Turner*, 396 U.S. at 400. "[T]he trial judge charged the jury in accord with the statute that the jury could infer from [the defendant's] unexplained possession of the **heroin and cocaine** that [he] knew that the drugs . . . had been unlawfully imported." *Id.* (emphasis added).

At that time, "the inference authorized by the [statute and] the prevailing judicial view [was] that **heroin** is not made in this country but rather is imported from abroad." *Turner*, 396 U.S at 409 (emphasis added). *See also id.* at 416 ("To possess heroin **is** to possess imported heroin.") (emphasis in original). The High Court thus did not disturb the jury instruction as to the possession of **heroin**. *See id.* at 417-18.

With respect to cocaine, however, the Court considered that "much more cocaine is lawfully produced in this country than is smuggled into this country." *Turner*, 396 U.S at 418 (footnote omitted). The Court thus held the jury instruction, allowing a presumption that the defendant knew the **cocaine** was illegally imported, could not stand. *Id.* at 423.

Appellant's PCRA petition did not address any of the above facts, or even the holding, in *Turner*. We emphasize the *Turner* decision did not address witness identification or even credibility, but instead a 1970 federal statutory

presumption concerning the illegal importing of heroin and cocaine. Accordingly, ***Turner*** does not afford Appellant any relief.

Furthermore, we conclude the particular instruction at issue did **not** direct the jury to presume any witness' identification was accurate or any witness' testimony was credible. ***See Antidormi***, 84 A.3d at 754. Instead, the instruction properly charged the jury to consider certain "additional factors," along with "all of the evidence relative to the question of who committed this crime," when deciding whether to believe those witnesses' identification of Appellant. ***See*** N.T., 1/7/16, at 113-14. As Appellant's underlying claim lacks merit, he cannot establish the ineffective assistance of trial counsel for not objecting to this instruction. ***See Smith***, 181 A.3d at 1174-75.

## VII. Conclusion

After independent review of the record, we conclude none of Appellant's desired claims have merit. Accordingly, we grant Attorney Lloyd's petition to withdraw from representation, and we affirm the November 22, 2019, order dismissing Appellant's PCRA petition.

Order affirmed. Application to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/21/2023